JACOB DONDIS *vs.* DAVID LASH & others.

Bristol. October 26, 1931. — December 4, 1931.

Present: RUGG, C.J., CROSBY, CARROLL, SANDERSON, & FIELD, JJ.

*Equity Pleading and Practice,* Appeal: dismissal for failure to perfect, petition for late entry; Decree. *Equity Jurisdiction,* To set aside conveyance in fraud of creditors.

The amendment to G. L. c. 231, § 135, contained in St. 1931, c. 219, effective May 8, 1931, was not retroactive in effect and did not validate steps in procedure completed before its enactment and invalid under the statutes as then existing.

An appellant from a final decree in a suit in equity, who in 1930, while waiting for the filing by the trial judge of a report of material facts requested by him under G. L. c. 214, § 23, delayed giving the order in writing for the preparation of necessary documents for entry in this court five days beyond the time permitted by G. L. c. 231, § 135, as amended by St. 1929, c. 265, § 1, and whose contentions on appeal were worthy of consideration, was permitted, under G. L. c. 211, § 11, after the affirmation of a decree dismissing his appeal under said § 135 as so amended, to enter his appeal late.

Upon facts found by a master in a suit in equity against several defendants, it appeared that at a time when three of the defendants were indebted to the plaintiff upon a note for $24,000, payable in instalments with interest and secured by a mortgage, two of the defendants also gave the plaintiff a mortgage on a two-thirds interest in certain real estate as "additional security only for two-thirds of the amount which may be due under the said principal mortgage," which was to be discharged at the end of four years if there was compliance with all terms and conditions of the principal mortgage. After a foreclosure of the mortgage first above mentioned and when there was about $20,000 still due on the note and when one of the defendants had acquired the sole title to the property covered by the mortgage second above described, by arrangement of the plaintiff with him the plaintiff discharged that mortgage and received in place thereof a second mortgage on the entire interest in that property containing the provision, "This mortgage is given as additional security for the amount of the

balance due on" the principal note, and a provision that it was to
be discharged upon the payment of $5,000 by said defendant as mort-
gagor. It also was agreed orally that such defendant was to pay
enough to bring his payments up to seventy-five per cent of the amount
then due on account of unpaid instalments of principal and interest
on the principal note, and was to be responsible for only seventy-five
per cent of the payments thereafter falling due, and that such de-
fendant might sell the property on payment to the plaintiff of $5,000.
Thereafter that defendant with intent to defraud the plaintiff con-
veyed the equity in the property, then of the value of about $10,000,
to another defendant by a colorable conveyance known to the grantee
to be such. *Held,* that the suit might be maintained under § 7 of
c. 109A, added to the General Laws by St. 1924, c. 147, to reach the
interest thus conveyed, it not appearing that either by conduct pre-
vious to the conveyance or by subsequent ratification the plaintiff
expressly or impliedly had assented to it.

Findings by the master in the suit above described to the effect that at the
time the mortgage for $5,000 was given the plaintiff assented "to the
sale of the property" by the defendant and that "it was understood
by the plaintiff that" the defendant "could sell the property on pay-
ment to the plaintiff of $5,000" and that the defendant said to the
plaintiff during the negotiations resulting in the mortgage for $5,000
that "he needed the money from the sale of the property to pay his
debts," afforded no foundation for inferring that the plaintiff consented
to such a fraudulent conveyance.

The promise of the plaintiff in the suit above described to hold the defend-
ant responsible only for seventy-five per cent of the indebtedness then
due and of that thereafter falling due on the principal obligation was
based upon a valuable consideration, since the plaintiff as a part of the
transaction, although discharging his second mortgage on a two-thirds
interest in the property, was getting a mortgage on the entire title of
that property subject to the first mortgage, which was a new security
on its face of a higher grade than that which he held theretofore.

The circumstance that the master in the suit above described found that,
as first drafted, the mortgage for $5,000 contained a clause to the
effect that it was "additional security for *75% of* the amount *of my
share* of the balance due on" the principal obligation and that there-
after the paragraph was changed by striking out the italicized words,
did not change the governing principle of law as stated above, since
neither as originally drawn nor as subsequently changed did the para-
graph purport to affect "the amount of the balance due" on the
principal obligation.

BILL IN EQUITY, filed in the Superior Court on March
26, 1929, and described in the opinion.

The suit was referred to a master. Findings by the
master are stated in the opinion. The suit was heard on
the master's report by *Beaudreau,* J., who filed a "report

of material facts" containing the following: "The conveyance to Sarah Cohen was undoubtedly a fraudulent or preferential conveyance as to any creditor who might seek to avoid it unless such creditor had actually or impliedly consented thereto; but I find that the petitioner both by knowledge of the intention of said David Lash to convey when the second collateral mortgage was given, and by actually agreeing that the conveyance might be made, and by receiving the $5,000 preference on condition that he would agree that such conveyance could be made, has no equitable right now to claim that the conveyance was fraudulent as to him and his primary claim."

By order of the judge, there were entered an interlocutory decree confirming the master's report and a final decree containing the following paragraphs:

"(1) That upon the prayer of the respondent Sarah Cohen that the Court determine the amount which she is obligated to pay the petitioner in order to secure a discharge of his mortgage on the Second Street property, the said amount is $4,850, and the petitioner is to discharge said mortgage upon the payment of said sum;

"(2) That the master's finding that the sale was fraudulent as against creditors of respondent David Lash does not benefit this petitioner, the master having also found that said petitioner consented to the sale, and it appearing that said sale was in the contemplation of the parties when said Second Street mortgage was given; wherefore as to said David Lash, said bill be and the same is hereby dismissed."

The plaintiff appealed.

Proceedings respecting dismissal of the appeal for failure to prosecute it according to G. L. c. 231, § 135, as amended by St. 1929, c. 265, § 1, and a petition in this court for a late entry under G. L. c. 211, § 11, are described in the opinion.

*A. E. Seagrave,* for the plaintiff.

*J. A. Cohen,* for the defendants.

RUGG, C.J.   This is an appeal by the plaintiff from an adverse decree entered in the Superior Court on October

17, 1930. The plaintiff appealed on October 20, 1930, and on that date filed a request under G. L. c. 214, § 23, for a report of material facts. On November 1, 1930, such report was filed. On November 4 an order in writing was given to the clerk of courts for the preparation of the necessary papers and copies for transmission to the full court. On November 10, 1930, the estimate of expense was furnished by the clerk as requested, and the amount thereof was paid on November 21, 1930, and the case was entered in this court on December 10, 1930. On May 8, 1931, the defendants filed in this court a motion to dismiss the appeal for the reason that it appeared from the record "that the order in writing for the preparation of the appeal was not given to the clerk . . . within the time required by law."

The statute in force at the time the appeal was taken was G. L. c. 231, § 135, as amended by St. 1929, c. 265, § 1. The terms of that statute were mandatory to the effect that a party in the position of the plaintiff "shall give to the clerk . . . of the court in which the case is pending, within ten days after the appeal . . . an order in writing for the preparation of . . . papers and copies of papers for transmission to the full court." Since the appeal was filed on October 20, 1930, and the order was not given until November 4, 1930, it is plain that there was no compliance with the mandatory requirements of this statute. *Niosi* v. *Leveroni,* 274 Mass. 115. *McCarty* v. *Boyden,* 275 Mass. 91. *Martell* v. *Moffatt,* 276 Mass. 174. Said § 135, as amended, was further amended by St. 1931, c. 219, whereby the limitation of time for giving the order to the clerk for preparation of papers was changed so that it must be given "within ten days after the case becomes ripe for final preparation and printing of the record for the full court." Said c. 219 was approved on April 17, 1931, and, having been declared to be an emergency law, was in effect on May 8 when the motion to dismiss this appeal was filed. Said § 135, as most lately amended by said c. 219, relates to practice and procedure and therefore applies to pending cases. There is, however, nothing in that section as most lately amended to indicate that it was intended to be

retroactive to the extent of making valid steps in procedure completed before its enactment and invalid under the statutes as then existing. Steps in procedure already taken must stand or fall in accordance with the provisions of law applicable at the time those steps were taken. Steps in procedure invalid under controlling rules of law at the time they were taken are not validated by any of the words in said c. 219. Although the order in writing for preparation of papers given by the plaintiff on November 4, 1930, would have been seasonable if St. 1931, c. 219, had been in force at that time, there is nothing in that chapter to warrant the conclusion that such an order, invalid when given, was to be thereby made valid even though it would have been valid if given subsequently to the effective date of that chapter. The circumstance that the motion to dismiss the appeal was filed after the enactment of said c. 219 does not affect the rights of the parties which were fixed by events coming to pass in the preceding October and November. It follows that the motion to dismiss must be granted under the controlling statutory words in effect in October and November, 1930, and under the authority of the cases already cited. There is nothing in *Martell* v. *Moffatt*, 276 Mass. 174, to support the plaintiff's contention.

The plaintiff on October 26, 1931, filed a petition to enter his appeal late under the provisions of G. L. c. 211, § 11, to the effect that "If, by mistake or accident, an appeal from the superior court . . . is not duly entered in the full court, that court, upon petition filed within one year after the appeal . . . should have been entered . . . may allow the appellant to enter his appeal . . . ." Plainly this petition was filed within the time allowed by the statute. Compare *Barron* v. *Barronian*, 275 Mass. 77. The delay of the plaintiff beyond the statutory period then permitted in giving the order for preparation of the papers was at most only five days. The appeal itself was promptly taken. It does not appear that the rights of the defendants have been adversely affected by that delay. The question is close whether the plaintiff has made out a case under said § 11,

*Wiakowicz* v. *Hwalek*, 273 Mass. 122, but the plaintiff has a case worthy of consideration on its merits, *Mellet* v. *Swan*, 269 Mass. 173, *Alpert* v. *Mercury Publishing Co.* 272 Mass. 43, 45, *Lovell* v. *Lovell*, 276 Mass. 10, 11, and his petition for late entry is granted.

The case on its merits is a suit in equity by a creditor of the first named defendant, hereafter called the defendant, to set aside a conveyance alleged to have been made by him to another defendant in fraud of the plaintiff as a creditor. The case was referred to a master under a rule which required him to hear the parties and their evidence and report his findings without report of the evidence. It was heard by the trial judge upon the master's report. It is the duty of this court in these circumstances to consider and decide the case upon the facts reported by the master together with such reasonable inferences as this court thinks should be drawn therefrom unaffected by the inferences drawn or the decision made by the trial judge. *Glover* v. *Waltham Laundry Co.* 235 Mass. 330, 334. *Anagnosti* v. *Almy*, 252 Mass. 492, 501. *Prudential Trust Co.* v. *McCarter*, 271 Mass. 132.

The material facts are that the plaintiff was a creditor of the defendant and others by reason of holding a joint and several note for $24,000, dated March 4, 1925, payable in monthly instalments of $125 with specified interest, signed by the first named defendant and two other defendants and secured by a second mortgage of real estate on Pleasant Street, in Fall River. At the same time a mortgage was also given as "additional security only for two-thirds of the amount which may be due under the said principal mortgage" on a two-thirds interest in real estate on Second Street in Fall River. This mortgage was given by the defendants David Lash and Charles Lash and provided that it was to be discharged at the end of four years if there was compliance with all terms and conditions of the principal mortgage. At times not stated in the master's report the other makers of the note aside from the defendant became unable to make payments on the principal indebtedness, one of them went into bankruptcy, the plaintiff took steps to

foreclose his mortgage on the Pleasant Street property, and no evidence was offered to show that he realized anything by foreclosure proceedings. Payments were made from time to time on account of the principal of this indebtedness, and the unpaid balance with interest at the time of the filing of the bill was in the vicinity of $20,000. In October, 1928, as a result of conference between the plaintiff and the defendant the plaintiff discharged his mortgage upon the Second Street property and the defendant, in the meantime having acquired sole title thereto, executed a second mortgage to the plaintiff for $5,000 on the entire interest therein subject to a pre-existing first mortgage. It contained this clause: "This mortgage is given as additional security for the amount of the balance due on note secured by mortgage dated March 4, 1925 . . . ." It was also provided that the mortgage was to be discharged upon the payment of $5,000 by the defendant as mortgagor. At the same time when the parties came to the agreement whereby the plaintiff released the existing mortgage on this property, and the defendant gave the $5,000 mortgage as just described, the defendant gave the plaintiff a check for $1,378.77, an amount less than that then due on the principal note. As a part of the same transaction it was orally agreed that the defendant was to pay enough to bring his payments up to seventy-five per cent of the amount then due on account of unpaid instalments of principal and interest on the March 4, 1925, note, and was to be responsible for only seventy-five per cent of the payments thereafter falling due. The plaintiff released the former mortgage on the Second Street property and accepted the $5,000 mortgage. Further findings of the master as to this transaction are these: "The total amount due on account of the past due instalments of principal and interest on the note was then $2,942.52. Without being a term of the agreement it was understood by the plaintiff that Lash could sell the property on payment to the plaintiff of $5,000. Under this agreement David Lash was to pay seventy-five per cent of the amount past due on principal after the payment of $1,096.54 on May 14, 1927, and the deficiency in seventy-five per cent of the instalments subsequently due less payments

made by him on account of principal after May 14, 1927, and before October 10, 1928, plus the interest on seventy-five per cent of the balance of the principal since the last payment before October 10, 1928. The amount due, according to the agreement, calculated in this way was $1,656.62. The parties, however, agreed on $1,378.77 which was paid as above stated and accepted by the plaintiff as the amount so due and in full settlement of David Lash's share of instalments and interest due up to that time on the seventy-five per cent basis." About November 15, 1928, the defendant transferred his title in the Second Street property to his sister-in-law, the defendant Cohen. The master found that this transfer was made with the intent to defraud the plaintiff and that the defendant Cohen knew of the desire of the defendant to get the property out of his name in order to prevent creditors from reaching it. Subsidiary facts support this conclusion. The finding was avowedly made in part upon the demeanor and apparent credibility of the witnesses. The master further found in substance and effect that the value of the Second Street property at the time was about $10,000 or $11,000 above the encumbrances. Although the defendant Cohen gave her check to the defendant for $4,220 and later drew her check for $897.60 for taxes, the master finds that these payments were "small for the value of the property" but he finds further that the money paid by the defendant Cohen came directly or indirectly from the defendant. In other words the transaction between these two was a mere subterfuge.

Upon these facts the plaintiff is entitled to relief under c. 109A inserted in the General Laws by St. 1924, c. 147. It is thereby provided by § 7 that every "conveyance made . . . with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors, is fraudulent as to both present and future creditors." The findings of the master already summarized bring the case at bar categorically within these statutory words. Confessedly the plaintiff is a creditor of the defendant. The conveyance to the defendant Cohen was not made

upon any valuable consideration, much less upon a fair consideration as defined in § 3. The plaintiff is entitled by the terms of § 9 (1) (a) to have the conveyance to the defendant Cohen "set aside . . . to the extent necessary to satisfy his claim . . . ." The finding of the master to the effect that at the time the mortgage for $5,000 was given the plaintiff assented "to the sale of the property" by the defendant and that "it was understood by the plaintiff that" the defendant "could sell the property on payment to the plaintiff of $5,000" means that the plaintiff was willing that the defendant should make an honest sale of the property. It cannot be presumed that a party approves of or consents to a fraud. People are not presumed to connive at fraud because that is not the ordinary conduct of mankind. *Janevesian* v. *Esa,* 274 Mass. 231, 233, and cases cited.

There is no finding that the plaintiff consented to the kind of conveyance that was made by the defendant to Mrs. Cohen. There is nothing in the master's report to warrant an inference that the plaintiff actually agreed that this conveyance might be made or that he had any knowledge of the proposed conveyance. The finding of the master to the effect that the defendant said to the plaintiff during the negotiations resulting in the mortgage for $5,000 that "he needed the money from the sale of the property to pay his debts" affords no foundation for inferring that the plaintiff consented to a fraudulent conveyance. Thereby no money would be obtained to pay his debts; on the contrary, its purpose was to defeat just claims of creditors. There are no facts in the report to support an inference that after he learned of this conveyance the plaintiff did anything to prevent himself from enforcing his rights as a creditor. He neither affirmed it nor took steps inconsistent with a purpose to set it aside. Neither by conduct previous to the conveyance nor by subsequent ratification has the plaintiff expressly or impliedly assented to it. He is therefore in a position to impeach the conveyance and to assert his rights as a creditor under said c. 109A.

There is no foundation for the contention of the defend-

ant that the property conveyed was worthless and that hence the conveyance ought not to be set aside. The finding of the master is directly to the contrary.

The findings of the master as to the agreement made between the plaintiff and the defendant at the time of the execution of the mortgage for $5,000 must stand and be the basis of the final decree if and so far as the precise amount due to the plaintiff from the defendant may be material. The promise of the plaintiff to hold the defendant responsible only for seventy-five per cent of the indebtedness then due and of that thereafter falling due was based upon a valuable consideration. The plaintiff as a part of the transaction, although discharging his second mortgage on a two-thirds interest in the Second Street property, was getting a mortgage on the entire title of that property subject to the first mortgage. This was a new security on its face of a higher grade than that which he held theretofore. Of course a bald promise from a creditor to a debtor to release a part of an existing indebtedness is without consideration and unenforceable. But where a creditor makes such promise as part of a transaction where he acquires new and different valuable rights, he is bound thereby. It is not necessary that the consideration be adequate; it is enough if it is valuable. The governing principles are set out at length in *Barnett* v. *Rosen,* 235 Mass. 244, and need not be repeated. The agreement therefore was valid. The finding of the master that on the basis of this agreement the unpaid balance of indebtedness to the plaintiff from the defendant at the date of the filing of the present bill was $14,618.97 must stand and be the foundation of the final decree, subject to such modifications as the events which have happened since that time may require. *Day* v. *Mills,* 213 Mass. 585.

The circumstance that the master found that as first drafted the mortgage for $5,000 contained a clause to the effect that it was "additional security for *75%* of the amount *of my share* of the balance due on note secured by mortgage dated March 4, 1925," and that thereafter the paragraph was changed by striking out the italicized words,

does not change the applicable rule.  This paragraph as originally drawn or as subsequently changed does not purport to affect "the amount of the balance due" on the note of March 4, 1925.  It relates only to the extent of security for that amount, whatever it might be, to be afforded by the new $5,000 mortgage.  There is therefore no room for the application of the principle declared in *Mears* v. *Smith,* 199 Mass. 319, *Spevack* v. *Budish,* 238 Mass. 215, and similar cases to the effect that the terms of a writing fixing the rights of parties cannot be varied by antecedent negotiation or contemporaneous qualification.

It follows that the final decree is to be reversed.  A decree is to be entered establishing the amount due to the plaintiff from the defendant as found by the master subject to such modifications as subsequent events may require and granting whatever relief the facts as disclosed by the master's report or by further hearing may require with respect to the conveyance of the Second Street property from the defendant David Lash to the defendant Sarah Cohen in November, 1928, under the terms of c. 109A inserted in the General Laws by St. 1924, c. 147, and awarding the plaintiff his costs.

*Ordered accordingly.*