## NOBLE et al. v. JOHNSON.

No. 26400.    May 25, 1937.

Thurman, Bowman & Thurman, for plaintiff in error John M. Noble.

W. H. Francis, B. B. Blakeney, Hubert Ambrister, W. R. Wallace, and B. B. Blakeney, Jr., for plaintiff in error Magnolia Petroleum Company.

Everest, McKenzie & Gibbens, for defendant in error.

BUSBY, J. This is an action to recover damages for slander of title to real estate. It was commenced in the district court of Oklahoma county on January 28, 1931, by Mary E. Johnson, as plaintiff, against John M. Noble and Magnolia Petroleum Company, as defendants.

On the trial of the case to a jury, judgment for $12,500 against both of the defendants was rendered on the verdict. The defendants appeal. We shall refer to the parties by their trial court designation.

The property the title to which is claimed to have been slandered is described in plaintiff's petition as follows:

"Block one (1), being the block of ground designated as reserved for factory site, and block two (2) and block three (3), and all irregular tracts between said blocks of ground and the North Canadian river, all in East Tenth street addition to Oklahoma City, according to the recorded plat thereof, subject, however, to the right of way of the Shawnee Interurban Railway containing approximately 9.3 acres of land; the same being a subdivision of lot five (5), section thirty (30), township twelve (12) north, range two (2) west of the I. M., situated in Oklahoma county, Oklahoma."

The adverse claims to title which finally culminated in this litigation are traceable to a common source. In 1911 one Eva Myers was the owner of this land. In May of that year she executed a deed to the Farmer's Motor Wagon & Plow Company. In connection with the deed a contract was executed whereby the grantee undertook to establish a factory on the land within six months or in the event of its failure to do so, to reconvey the property. A mortgage was also executed in connection with the same transaction for $2,800.

The factory was never established. Neither did the grantee in the above-mentioned deed ever reconvey. However, releases of the contract and mortgage were executed and recorded.

In the years immediately preceding 1923, John M. Noble, who owned some nearby land, made the mistake of paying taxes on the land here in controversy. He then procured an assignment of a tax sale certificate for other taxes on the land which were delinquent. In order to investigate the title, he on the advice of his attorney, J. R. Spielman, procured an abstract, and Mr. Spielman, upon examination thereof and after visiting the property and determining the factory had not been established thereon, advised Mr. Noble that the title was in Eva Myers. On January 18, 1923, Noble, accompanied by Spielman, went to the residence of Eva Myers and obtained from her a quitclaim deed.

The foregoing facts picture only in a general way the history of the title. Other details, while competent in connection with

questions not treated in this opinion, need not be here considered by reason of the limited basis of our decision.

On December 4, 1928 (five years after Noble obtained his deed), oil was discovered approximately two and a half miles south of the land and trouble started.

On December 21, 1928, Noble executed an oil and gas lease to the Magnolia Petroleum Company, which, on advice of their attorney, accepted and approved Noble's title.

On September 9, 1929, Mary E. Johnson, plaintiff herein, commenced an action in the district court of Oklahoma county to quiet title against the claims of Noble and the Magnolia. The case was removed to the federal court and there tried, resulting in a decree in favor of Mrs. Johnson as to ownership. The decree became final and it is thus conclusively established that Mrs. Johnson owned the land and incidentally established as between the parties to that suit that Mr. Spielman's advice had been erroneous. This was probably due, as shown by the record, to the fact that there had been omitted from the abstract examined by Spielman a pertinent instrument.

Thereafter, on the 28th day of January, 1931, this action was commenced to recover alleged special damage asserted to have been suffered by reason of Noble and the Magnolia filing their respective conveyances of record and claiming under the same.

On the trial of the case, Mr. Spielman, who had at the time of trial been practicing law for 30 years in Oklahoma, testified as a witness for the defense in substance that in 1923 he discussed the matter with Mr. Noble, examined an abstract of title covering the land and advised Mr. Noble that title was in Eva Myers and assisted Noble in procuring a deed from her.

A lease buyer for the Magnolia who had conducted the deal with Mr. Noble testified that an abstract covering the property was submitted to the legal department of the company and that the attorney for the company approved the same on the theory that Noble's title was good.

This testimony, accompanied by other testimony of similar import, was produced by the defendants in support of their defense that their respective claims were asserted in good faith, without malice, and on advice of counsel.

Upon this defense the trial court instructed in part as follows:

(Instruction No. 37) "You are instructed that in this case the defendant, John M. Noble, pleaded as a defense to the plaintiff's alleged cause of action that in taking the quitclaim deed from Eva Myers and D. L. Myers, her husband, to the said John M. Noble, to the real estate in the plaintiff's petition described, and that in executing the oil and gas lease on said premises to his codefendant, the Magnolia Petroleum Company, he procured an abstract of title to said land certified by a regular abstracter, and took the advice of counsel touching the title to said land from duly licensed and qualified attorneys at law in Oklahoma City, and that said attorneys advised him that he was the owner of said land, and had the legal right to make an oil and gas lease thereon to the Magnolia Petroleum Company, and that, relying upon said advice, he did consummate said transaction with Magnolia Petroleum Company, and executed said lease, and that the same was done without malice, and with no intent to injure or damage the plaintiff. In this connection you are instructed that a defendant, in an action for slander of title to real estate, as in this case, has a right to take the advice of legal counsel and to act thereon. but it must appear to your satisfaction from the evidence that the defendant did disclose to such counsel truthfully all of the material facts within his knowledge and made to said counsel a fair representation of his claims, and it must further appear that counsel advised such defendant honestly, sincerely and in good faith as to the course to be pursued in the protection of the defendant's rights."

(Instruction No. 38): "* * * and if you further find from the evidence that said counsel did advise the defendant John M. Noble honestly, sincerely and in good faith as to the course to be pursued in the protection of the rights of said defendant Noble, then your verdict should be for the defendant John M. Noble, as to his taking said quitclaim deed."

(Instruction No. 39): "* * * and that such advice given by said attorney for Noble was given honestly, sincerely and in good faith. then you will find for the defendant Noble exempting him from any liability for executing the oil and gas lease on said premises to the Magnolia Petroleum Company."

(Instruction No. 41): "* * * if you further find that in taking said abstract and submitting the same to said attorney the defendant John M. Noble did truthfully disclose to him. the said attorney, all the material facts within his knowledge regarding said transaction in good faith and that said attorney advised said defendant Noble honestly, sincerely and in good faith as to the course to be pursued."

In instruction No. 42, relating to the same defense on the part of the Magnolia, it was stated:

"You are further instructed that the defendant Magnolia Petroleum Company has pleaded as a defense that in the entire transaction with its codefendant John M. Noble in procuring the said oil and gas lease on the plaintiff's land, that it acted in the highest and utmost good faith and upon the advice of a regularly licensed and practicing attorney, W. R. Wallace, who examined and approved the title of John M. Noble to said property before said Noble executed the said lease, and if you find from the evidence that the defendant Magnolia Petroleum Company made to its said counsel a fair representation of the facts regarding said transaction and did truthfully disclose to such attorney all of the material facts within the knowledge of said defendant at the time, and the said counsel honestly, sincerely and in good faith advised the defendant Magnolia Petroleum Company that it had the legal right to buy said lease, then your verdict will be for the defendant Magnolia Petroleum Company."

These instructions were excepted to by each of the defendants and are presented here as error. Under the instructions the cause was submitted to a jury, resulting in the judgment now complained of.

It is the established law of this state that malice is a necessary ingredient of an action for slander of title. Ward et al. v. Mid-West & Gulf Co., 97 Okla. 252, 223 P. 170; Rittenhouse v. Johnson, 161 Okla. 169, 17 P. (2d) 457. See, also, 37 C. J. 131, sec. 698. This is conceded by counsel for both parties.

While malice may be implied or inferred from the circumstances of a particular case as they are ascertained to exist (New England Oil & Pipe Line Co. v. Rogers, 154 Okla. 285, 7 P. (2d) 638), yet good faith and want of malice may be shown by establishing that the unsound claim of title was asserted upon the advice of counsel sought, obtained, and acted upon in good faith, provided, of course, the material facts are fully and correctly revealed to the attorney from whom the advice is obtained. Ward v. Mid-West & Gulf Co., supra; Hurwitz v. Lotz (La.) 313 S. 351.

We understand this to be conceded by counsel for plaintiff, who say in their brief:

"There is no question that if Mr. Noble or the Magnolia did what they did in pursuance of a bona fide claim, which each of them asserted honestly and if acting under the advice of counsel, though without

right, that the plaintiff cannot recover unless it is shown that the defendants did not honestly and truthfully disclose to their counsel all of the facts in connection therewith for the purpose of acting upon such advice, and that defendants acted maliciously."

The precise question of law presented in this case by the instructions of the trial court above quoted is this: If a person believing himself entitled to claim title to real estate seeks and accepts in good faith the advice of counsel, is he deprived of claiming the benefits of the advice received if the counsel (though unknown to him) was acting without sincerity or in bad faith? Five times the jury were told in substance that the bad faith or want of sincerity of counsel deprived the defendants of the benefit of the defense.

Counsel for the plaintiff do not call our attention to a single case supporting the trial court's instruction on this point. They direct our attention to Hines v. Lumpkin (Tex. Civ. App.) 47 S. W. 818, but that was an action against the attorney, not the person who sought his advice. It is not in point.

Actions for malicious prosecution and slander of title are very similar upon this type of defense. As stated in Bailey v. Dean, 5 Barb. (N. Y.) 297:

"To sustain an action for slander of title, or for malicious prosecution, there must be a want of probable cause. In that respect I think they should be put very nearly upon the same ground. If what the defendant says or does is in pursuance of a claim of title, he is not responsible. It would be a monstrous doctrine to assert that a party who brings his action of ejectment claiming title to the land may be sued in an action of slander if it should turn out that he was mistaken. In such case, malice, which is the gist of the action, is conclusively disproved."

The precise point under consideration has been many times treated in malicious prosecution actions and the decided weight of authority supports the view that the good faith or sincerity of counsel is immaterial if the advice is accepted in good faith. In other words, the question is whether the party seeking the advice of counsel received it in good faith, not whether counsel acted in good faith in giving it. Peterson v. Toner, 80 Mich. 350, 45 N. W. 346; Sandell v. Sherman, 107 Cal. 391, 40 P. 493; Seabridge v. McAdam, 119 Cal. 460, 51 P. 691; Shea v. Cloquet Lumber Co., 92 Minn. 348, 100 N. W. 111.

Similarly the error of an opinion given does not destroy the defense, for, if the advice were correct, no need should ever arise for consideration of the defense. Van Meter v. Bass (Colo.) 90 P. 637; Fleckinger v. Taffee (Mich.) 113 N. W. 311.

The instructions as given were erroneous. The reiteration of the same erroneous theory magnifies the error. By these orroneous instructions, the jury may well have wrongfully eliminated for all practical purposes the defense presented. They may have believed that the counsel from whom advice was sought did not act in good faith.

In view of the theory of defense and the evidence supporting the same, the error in the instructions was substantial and prejudicial.

Our view of this point dispenses with the necessity of discussing other arguments presented. Reversed and remanded.

OSBORN, C. J., BAYLESS, V. C. J., and PHELPS and HURST, JJ., concur.