HUMBLE OIL & REFINING CO. et al. v.
LUCKEL et al.
No. 11516.

Court of Civil Appeals of Texas. Galveston.
April 22, 1943.

Rehearing Denied May 27, 1943.

Carlos B. Masterson and Floyd Enlow, both of Angleton, and R. E. Seagler, Dillard Baker, and Ralph B. Lee, all of Houston (E. E. Townes and Felix A. Raymer, both of Houston, of counsel), for appellants.

A. R. Rucks, of Angleton, and Cook, Blake, McCormick & Dickson, Cecil N. Cook, and Kirby Fitzpatrick, all of Houston, for appellees.

MONTEITH, Chief Justice.

This suit was brought by appellees, Louis Luckel, Jr., et al. against Humble Oil & Refining Company, Fred L. Wisch, Leo H. Wisch, Carlos B. Masterson and Mrs. Hazel Saint, individually and as executrix of the estate of Mrs. Louisa Wisch, deceased, and her husband, J. A. Saint, on three counts: (1) A statutory suit in trespass to try title for the recovery of the title to and possession of a 7/8 working interest in the minerals in 500 acres of land out of the David McNeel Survey in Brazoria County, Texas; (2) an action for damages for alleged slander of appellees' title to their interest in the above-described land; and (3) an action for damages because of alleged wrongful acts by appellants in causing the expiration of appellees' mineral lease on the above-described land in the event said lease was found to have expired.

Appellants answered by general and special denials and pleas of not guilty.

In a trial before the court judgment was rendered that appellees recover of and from all defendants the 7/8 working interest in the minerals under the 500 acres of land in controversy and that the 90 day period provided for in the lease agreement under which appellees claimed title be extended to 95 days from the date the judgment of the trial court became final. The judgment provided that the mineral lease from Fred Wisch and Leo Wisch to Carlos

B. Masterson, for the benefit of Humble Oil & Refining Company, be cancelled in so far as it conflicted with appellees' lease. The judgment also awarded damages in favor of appellees against Humble Oil & Refining Company in the sum of $50,000. Notice of appeal from said judgment was given by Humble Oil & Refining Company, Leo H. Wisch, Fred L. Wisch and Carlos B. Masterson.

Findings of fact and conclusions of law were filed by the trial court. They were duly excepted to by appellants.

Mrs. Louisa Wisch died testate on October 11, 1925, leaving surviving her, her husband, W. H. Wisch, and three children, Mrs. Hazel Saint, Leo H. Wisch, and Fred L. Wisch. At the time of her death, she owned approximately 1100 acres of land in the Daniel McNeel Survey in Brazoria County, Texas, 500 acres of which is involved in this suit.

The sections of the will of Mrs. Louisa Wisch which relate to said 1100 acres of land and are material to this appeal read as follows:

"Item 3: I will and direct that my place in Brazoria County, Texas, being a tract of approximately 1100 acres shall be handled and the title thereto shall vest in the manner following:

"(a) Out of the net proceeds or returns from said tract by way of rent or otherwise there shall be paid to my beloved husband, W. H. Wisch, for and during his natural life or until the sale of said tract conformable to the terms hereof, the sum of $600.00 per year, or so much thereof as shall be available from said net proceeds. If said net proceeds amount to more than $600.00 in any year, then the excess above $600.00 shall be set aside to make up any possible deficiency in some subsequent year.

"(b) I believe that said tract is in the line of probable oil development and is probably valuable oil property. My son, Fred, has been doing some work in an effort to negotiate a mineral lease upon said property with a responsible oil company on a basis which would provide an initial payment of $5.00 per acre. If my son, Fred, be successful in negotiating said lease and my three children, Fred Wisch, Leo Wisch and Mrs. Hazel Saint, agree that it is desirable to make said lease, then I direct that said lease be made, provided that the terms thereof shall be agreeable and acceptable to all three of said children. * * *."

(Subparagraph "b" of said will next provided for the disbursement of the proceeds of said rental payment if and when made.

"(c) Said Brazoria County tract may not be sold during the lifetime of my beloved husband, W. H. Wisch, except with unanimous consent and acquiescense of said husband and my said three children; but with said unanimous consent said tract may be sold during the lifetime of my said husband and in such event the proceeds of sale shall be divided into four equal parts, three of said equal parts shall go to and become the property of respectively, one to each of my said children, Fred Wisch, Leo Wisch and Mrs. Hazel Saint; the fourth equal part of said proceeds shall be so handled, reserved and used that there shall be paid to my beloved husband for and during his natural life out of the income of said one-fourth * * *.

"(d) If said Brazoria County tract be not sold during the lifetime of my said beloved husband, then upon the death of my said husband, the title to said tract shall descend to and vest in my said three children, Fred, Leo and Hazel, share and share alike, and said three children shall own said tract in fee simple absolutely in equal undivided interests."

Item 6 of said will provided for the appointment of Mrs. Hazel Saint as independent executrix, without bond, and with full power of sale. She duly qualified as such executrix. The will was probated in Harris County, Texas, on January 6, 1926.

The mineral lease on said 1100 acres of land referred to in subsection "b" of "Item 3" of said will was never consummated. However, other mineral leases involving the land were made by Mrs. Hazel Saint, as independent executrix under the will, subsequent to its probate and prior to the date of the execution of the lease involved herein. In no instance during that period was any mineral lease executed affecting said land in which W. H., Fred and Leo Wisch did not either join her in the execution thereof or consent and acquiesce thereto.

On February 16, 1940, Mrs. Hazel Saint, as independent executrix, for an expressed consideration of $10 paid, executed the oil and gas lease on the 500 acres involved herein in favor of Louis Luckel, Jr., trustee, under which appellees claim title. This lease was for a primary term of three years. It provided for the usual 1/8 royalty and delay rentals of $5,000 per year. On the same date and as a part of the lease agreement, appellee Luckel and Mrs. Saint executed a supplementary contract under which the lessee obligated himself, within 90 days from the date of the contract, to commence a 7500-foot well on said 500 acres of land, and in the event of his failure to do so to pay $25,000 to the lessor, and that in the event of lessee's failure to either drill said well or to pay said forfeit it was agreed that the lease would terminate as to all parties thereto. Mrs. Saint did not consult with Fred or Leo Wisch concerning the execution of this lease or said supplemental contract prior to their execution, but notified them of her action after the instruments had been executed.

On February 21, 1940, Fred Wisch and Leo Wisch entered into an escrow agreement and a mineral lease with Carlos B. Masterson covering their undivided ⅔ interest in the 600 acres out of the southwest portion of the Louisa Wisch 1100-acre tract. This lease included the 500-acre tract leased by Mrs. Hazel Saint, as independent executrix, to appellee, Louis Luckel, Jr. Carlos B. Masterson took this lease in his name for the benefit of the Humble Oil & Refining Company.

On March 19, 1940, appellee, Louis Luckel, Jr., entered into a drilling contract with the Harry L. Edward Drilling Company, wherein the Drilling Company agreed to drill a well on the northeast 250 acres of the 500 acres of land in controversy within 45 days after the date of the execution of the drilling contract, provided appellee could furnish a merchantable title to said 250 acres of land. Later the time within which this well was to be drilled was extended by agreement for a period of 120 days. In this extension agreement the Drilling Company obligated itself to begin the drilling of a well 45 days after the approval of appellees' title to said land. The record shows that no well has been drilled on said land under said contract; that appellees have never paid or tendered payment of the $25,000 required to be paid under the terms of said supplemental agreement, and that no agreement was made between appellees and Mrs. Hazel Saint, as such executrix, extending their time for the performance under said mineral lease or supplemental agreement or waiving any of the requirements or conditions thereof.

The controlling questions presented in the appeal are whether the action of the Humble Oil & Refining Company in

taking, under assignment from Carlos B. Masterson, the mineral lease on the land in controversy from Leo and Fred Wisch, devisees under the will of their mother, Mrs. Louisa Wisch, amounted to a slander of appellees' title in and to said land, and, if so, whether appellees have suffered damages by reason thereof for which Humble Oil & Refining Company may be charged.

■ It is settled in this State that, in order for a plaintiff to recover in an action for defamation or slander of title, he must allege and prove: (1) the uttering and publishing of the slanderous words; (2) that they were false; (3) that they were malicious; (4) that he sustained special damages thereby; and (5) that he possessed an estate or interest in the property slandered. Stovall v. Texas Company, Tex.Civ.App., 262 S.W. 152, writ of error refused 114 Tex. 582, 278 S.W. 1115, and the cases there cited; Fant v. Sullivan, Tex.Civ.App., 152 S.W. 515; 27 Tex.Jur. 789, sec. 105; 37 Corpus Juris 131, sec. 597.

It is undisputed in the record in the instant case that Humble Oil & Refining Company, through Carlos B. Masterson, for a valuable consideration, purchased its lease from Fred and Leo Wisch covering their undivided ⅔ interest in the land in controversy. The lease was for a primary term of five years. It provided for the payment of a ⅛ royalty on all oil and gas produced and delay rentals for failure to drill. The lease does not purport to convey the ⅓ undivided interest of Mrs. Hazel Saint in the land in controversy.

Under these facts, the question first presented is whether the Humble Company, as the grantee therein, acquired either a present or a future interest in said land subject to sale and conveyance.

While the will of Mrs. Louisa Wisch expressly prohibited the sale of a present interest in said 1100 acres of land during the lifetime of W. H. Wisch, without the consent and acquiescence of her three children, it clearly vested an undivided ⅔ interest therein in Fred and Leo Wisch after his death.

■ It is well settled in this state that an expectancy of inheritance, or even the anticipated rights of a person as next of kin, may be the subject of a sale and conveyance in equity, which will be equivalent to an assignment of the property if and

when it shall ·fall into possession. Hale v. Hollon, 90 Tex. 427, 39 S.W. 287, 36 L.R.A. 75, 59 Am.St.Rep. 819; Barre et al. v. Daggett et al., 105 Tex. 572, 153 S.W. 120; Hammett v. Farrar, Tex.Com. App., 29 S.W.2d 949.

Unquestionably, the Humble Oil & Refining Company acquired an interest in remainder subject to sale and conveyance in the land in controversy under its lease from Fred and Leo Wisch. This is particularly true for the reason that said lease contained a general warranty clause. Under this lease the interests of Fred and Leo Wisch would vest in the Humble Company in any event after the death of W. H. Wisch and upon the expiration of the Luckel lease. It is undisputed that the Humble Company did not, under said lease, claim the ⅓ undivided interest of Mrs. Hazel Saint in said land and that appellees were notified of this fact. The record shows that appellees were also notified by H. P. Pressler, Jr., an attorney for the Humble Company, that they were free to go upon the land in controversy at any time.

■ In its last analysis under this record the only complaint the appellees had against the Humble Oil & Refining Company was the fact that it had taken a lease on the present and future interests of Fred and Leo Wisch as devisees under the will of their deceased mother, Mrs. Louisa Wisch, in the land in controversy. Under the above authorities, we think that the Humble Company acquired a property right under said lease which it was not required by law to relinquish without tender of compensation therefor, and that said lease does not constitute a false claim as to its interest in the land in controversy.

■ It is the settled law in this state, as well as in other jurisdictions, that malice is an essential element in a slander of title suit, and that unless malice is alleged and proved such a suit cannot be maintained. Jarrett v. Ross, 139 Tex. 560, 164 S.W.2d 550; Stovall v. Texas Company, Tex.Civ.App., 262 S.W. 152, writ refused 114 Tex. 582, 278 S.W. 1115; Fant v. Sullivan, Tex.Civ.App., 152 S.W. 515, writ refused; Noble v. Johnson, 180 Okl. 169, 68 P.2d 838; Sinclair Ref. Co. v. Jones, 188 Ark. 1075, 70 S.W.2d 562; Glieberman v. Fine, 248 Mich. 8, 226 N.W. 669.

■ It is also well settled that a claim of title does not constitute malice where such claim is made under color of title upon the advice of attorneys, or upon reasonable belief that a party has title to the property acquired.

In the early case of Haldeman v. Chambers, 19 Tex. 1, the Supreme Court said: "It is very questionable whether an action will lie in any case, for the injury done the plaintiff, by slandering and bringing into doubt and distrust his title, by one who claims title in himself, and brings suit for the recovery of the property. * * * It is clear that an action will not lie for the slander of title, where the party acted under the advice of legal counsel in bringing the suit; and under the bona fide belief, founded on such advice, that he was entitled to recover. * * *."

In the case of Hill v. Ward, 13 Ala. 310, the Alabama Supreme Court stated: "It is sufficient if the defendant have a bona fide claim, or color of title, which he asserts in good faith. His title need not be paramount to that which the plaintiff claims; for if an action should lie, when the defendant claims bona fide an interest, how can anyone make claim or title, or begin any suit, or seek advice and counsel, without subjecting himself to an action."

In the case of Hurwitz v. Lotz, 172 La. 27, 133 So. 351, 352, the Supreme Court of Louisiana said: "An action for damages for slander of title, like a suit for damages for malicious prosecution, cannot be maintained if the act complained of was done without malice and was founded upon probable cause or was prompted by a reasonable belief in a just cause of action."

In the case of Noble v. Johnson, 180 Okl. 169, 68 P.2d 838, 841, the Oklahoma Supreme Court said: "To sustain an action for slander of title, or for malicious prosecution, there must be a want of probable cause. In that respect I think they should be put very nearly upon the same ground. If what the defendant says or does is in pursuance of a claim of title, he is not responsible. It would be a monstrous doctrine to assert that the party who brings his action of ejectment claiming title to the land may be sued in an action of slander if it should turn out that he was mistaken. In such cases malice, which is the gist of the action, is conclusively disproved."

It is undisputed that in asserting title in itself to the land in controversy under its lease from Fred and Leo Wisch, and in refusing to accede to appellees' request that it release its claim under said lease, the Humble Company was acting upon the advice of its attorney, H. P. Pressler, Jr.

The record shows that Mr. Pressler discussed the Humble Company's stand with appellees' attorneys and requested them to furnish authorities to substantiate their position. These authorities were not furnished.

The record also shows that the Humble Company did not prevent appellees from taking physical possession of this property but that they were notified by its attorney, H. P. Pressler, Jr., that they were free at all times to go upon the property to drill thereon wherever they desired.

■ Under above facts, we conclude that appellees failed to establish that the acts of the Humble Company in denial of appellees' title constituted malice in law.

Appellants complain of the action of the trial court in rendering judgment for $50,000 in damages against the Humble Oil & Refining Company for the alleged reason that the only damages which are recoverable in a suit for slander of title are special damages resulting from the loss of a specific sale. They contend that appellees have neither pled nor proved damages of this character in the trial court and that the damages upon which the court based his judgment were uncertain and speculative in their nature in that they related to wells that might have been drilled, production that might have been obtained, and market prices therefor that might have existed.

The trial court in his conclusions of law listed the following items upon which he based his judgment against the Humble Company: "6. The Edwards contract constituted a specific sale by Luckel, Trustee, from which Luckel, Trustee, would have derived benefits as herein found but for the acts of the Humble in denial of his title herein found and complained of by plaintiffs. * * * Plaintiffs are entitled to recover from the Humble the value to them of the performance of the Edwards contract, had it been performed; this includes: (a) The amount the plaintiffs would otherwise have been required to have expended to prevent their lease from terminating, either the cost of the well or the money to be paid the executrix; (b) the profit which would have

accrued to plaintiffs on the sale of 100 acres of their lease while said Edwards well was drilling; (c) the revenues from a 1/512 overriding royalty on the Edwards well; (d) the revenues from the 7/8 working interest in the products from the well on the Luckel 250 acres offsetting the Edwards well for two years; (e) the depreciation in the value of the land in suit to which plaintiff would have had title upon the completion of the Edwards contract, there being included in this item the additional cost of a well if drilled now instead of the time it would have been drilled in 1940."

He made the following statement in his conclusion of law No. 7 with reference to the testimony upon which he based his award for damages: "While it is clear that the plaintiffs are entitled to recover their damages against the Humble, this is one of those many cases in which it is very difficult and almost impossible to definitely prove some elements of damages. The tract of land is out there, and no one knows certainly whether there is oil under it or not until they drill. The geologists can determine and have here testified without dispute that with reasonable certainty it would produce minerals and the only thing we can go by is the opinion of the geologists until actual drilling is done."

■ It is the settled law in this state that in order to recover in a slander of title suit the plaintiff must allege and prove a pending sale which was defeated by the slander of title complained of. Shell Oil Company v. Howth, 138 Tex. 357, 159 S.W.2d 483, and cases there cited; Houston Chronicle Publishing Co. v. Martin, Tex.Civ.App., 5 S.W. 2d 170; 27 Tex.Jur. 791.

■ The record in the instant case shows that appellees did not allege that they had had any specific offer to buy the 100 acres of land referred to in the court's findings of fact, or that any specific sale of this acreage could or would have been made to any particular person. The trial court held that the Edwards contract constituted a specific sale and all of the items for which he awarded damages were based upon the alleged profits the appellees would have received if the Edwards Drilling Company had performed its contract. It follows that the appellees failed in the trial court to prove any specific item of damage for which

the Humble Company could properly be held liable in an action for slander of title, since no money consideration passed between appellees and the Edwards Drilling Company and the Drilling Company received as its compensation the 250 acres upon which the well was to be drilled under the contract. Under their contract with the Drilling Company, appellees were to receive a 1/512 overriding royalty on the first well drilled to be paid Luckel only if and when production was had. The trial court allowed appellees on this item, as a basis for damages, the amount of money the overriding royalty would have brought them had the well the Drilling Company had contracted to drill produced oil for a period of two years.

■ The generally accepted rule is that where it is shown that a loss of profit is a natural and probable consequence of the act or omission complained of and that amount is shown with sufficient certainty, there may be a recovery therefor; but anticipated profits cannot be recovered where they are dependent upon uncertain and changing conditions, such as market fluctuations or a change of business, or where there is no evidence from which they may be intelligently estimated; evidence to establish profits must not be uncertain or speculative. It is not necessary that profits should be susceptible of exact calculation, it is sufficient that there be data from which they may be ascertained with a reasonable degree of certainty and exactness. Southwestern Battery Corporation v. Owen, 131 Tex. 423, 115 S.W.2d 1097; Riddle v. Lanier, 136 Tex. 130, 145 S.W.2d 1094.

In the absence of proof of special damages to appellees resulting from the loss of a specific sale of said land, and in view of the uncertainty as to whether a producing well would have been drilled by the Edwards Drilling Company, and as to whether or not appellees would have been able to make sales of said land, we think that the court was clearly in error in assessing the damages complained of.

It follows from the above conclusions that the judgment of the trial court must be reversed and, since the case was fully developed in the trial court, judgment is here rendered in favor of appellants.

Reversed and rendered.