**BERRYMAN et al. v. SINCLAIR PRAIRIE OIL CO.**

No. 3489.

Circuit Court of Appeals, Tenth Circuit.

Oct. 23, 1947.

Rehearing Denied Jan. 12, 1948.

Russell Moore and Austin M. Cowan, both of Wichita, Kan. (W. A. Kahrs and Robert H. Nelson, both of Wichita, Kan., on the brief), for appellants.

George Siefkin, of Wichita, Kan. (Edward H. Chandler and Ralph W. Garrett, both of Tulsa, Okl., and Robert C. Foulston, of Wichita, Kan., on the brief), for appellee.

Before PHILLIPS, BRATTON and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

This was an action instituted in the United States District Court for the District of Kansas in the nature of a quiet title suit to remove the cloud of an oil and gas lease alleged to have been forfeited from plaintiffs' land located in Ellis County, Oklahoma, and for damages claimed to have resulted from permitting the alleged void lease to have remained of record. Trial was had to the court. At the conclusion of plaintiffs' evidence, the court sustained a motion by defendant for judgment in its favor. Such a judgment was entered and this appeal challenges the correctness of that judgment. Before the trial was reached in the court below, the lease was released of record. That part of the alleged cause of action relating to the quieting of title was, therefore, not considered by the trial court and is not involved in this appeal. The parties will be referred to as they appeared in the court below.

On January 26, 1944, plaintiffs gave the defendant an oil and gas lease covering 60,350 acres of land in Ellis County, Oklahoma. The lease provided that if no well was commenced on the land on or before January 26, 1945, it should terminate unless the lessee, on or before that date, should pay or deposit to the lessors' credit $30,175.00, which would operate as rental and cover the privilege of deferring the commencement of a well for twelve months from that date. On January 12, 1945, defendant rigged up equipment on the premises, and on January 19, 1945, commenced actual drilling operations and continued them until March 10, 1945, at which time the hole, which had reached a depth of 4,238 feet, was plugged and abandoned as a dry hole. Defendant spent more than $69,000.00 in these drilling operations. Concerning these facts there is no dispute.

The complaint alleged that defendant did not tender the delay rental, and did not, on or before January 26, 1945, commence a well as provided and required by the lease, and that by reason of the cloud of defendant's void lease on plaintiffs' land thereafter, they suffered damages of one dollar per acre per year. Plaintiffs' theory of the case is that defendant's drilling operations did not constitute the drilling of a completed well, and that as a result it forfeited its lease and was under a duty to release the same of record and remove the cloud thereof from the land, and having failed to do so plaintiffs were entitled to a judgment cancelling the lease and for damages resulting from the cloud thereof.

 In our opinion, the correct solution of the issues presented do not depend upon whether the drilling operations resulted in a completed well as that term is understood in "wildcat" drilling operations. Under the decisions of the Supreme Court

of Oklahoma, this is an action in the nature of an action for slander of title.[1] In order to recover in such an action, it is necessary for plaintiff to prove, among other things, that the publication complained of (the lease of record in this case) was false and maliciously placed or kept of record. Good faith in asserting an interest in property is a complete defense against liability in an action for damages for clouding a title.[2] Plaintiffs in this action may not prevail by merely showing that the lease has become void and that they are entitled to have their title quieted. Before they can obtain a judgment for damages, they must establish that defendant's claim to the continued validity of its lease was not made in good faith, and that, therefore, as a matter of law it was guilty of falsely and maliciously slandering plaintiffs' title by its refusal to release the lease of record. The good faith of the defendant in asserting its continued right to the lease is, therefore, an element in the case.

Defendant's good faith in continuing to assert its title and interest in the lease is, of course, bound up with its drilling operations. If it did not act in good faith in discontinuing further drilling operations, it could not, of course, be heard to assert that it acted in good faith in continuing to assert its interest in the lease and maintaining it of record.

Whether defendant acted in good faith in discontinuing drilling operations, and thus may be permitted to advance good faith in continuing to assert its interest under the lease as a defense for an action for damages for clouding a title, is a question of fact to be determined from a consideration of the facts and circumstances, including the testimony of expert witnesses.[3] The trial court found that it did act in good faith in ceasing further drilling operations. If that finding is sustained by the record, it must follow that it had a right to assert its continued interest under the lease, and is not subject to damages for failing to release it of record.

The well in consideration was drilled to what is known as the Chase sand, which, in many parts of this section of the country, is a producing sand, but no production was found there. In many sections of this part of the country, other sands such as the Mississippi, Arbuckle and Simpson sands are found, some of them lying thousands of feet below the Chase sand. Plaintiffs take the position that the defendant once having undertaken drilling operations was required to drill to the lowest sand in order to hold the lease, and that stopping short of this would work a forfeiture of the lease and subject it to liability in this action for failing to release it. But as pointed out, the question for decision is not whether the drilling operations were sufficient to prevent the termination of the lease; the precise question for determination is whether they were of such a nature as to warrant the assertion of good faith on the part of the defendant in continuing to assert its interest in the lease and keep it of record.

---

[1] Ward v. Mid-west & Gulf Co., 97 Okl. 252, 223 P. 170; Kingkade v. Plummer, 111 Okl. 197, 239 P. 628; Noble v. Johnson, 180 Okl. 169, 68 P.2d 838; Keiser v. Kile, 166 Okl. 41, 26 P.2d 194; Rucker v. Burke, 183 Okl. 639, 84 P.2d 20; Rogers v. Milliken Oil Co., 62 Okl. 147, 161 P. 799.

[2] In Dixon v. McCann, 87 Okl. 109, 206 P. 597, 599, the court said: "The lessee is not bound at his peril to determine disputed or doubtful questions, but, if he acts in good faith and honestly believes that his lease is valid and enforceable, he might not be subject to damages * * *."

In Ward v. Mid-west & Gulf Co., 97 Okl. 252, 223 P. 170, 171, the court said: "The finding of the court in this case to the effect that the defendants acted in entire good faith defeats any theory upon which damages might be awarded for the wrongful clouding of plaintiff's title."

Remark: In the Ward case, the trial court found that the lease was a cloud on the title and quieted the title against the same and also awarded damages. The Supreme Court reversed the part of the judgment awarding damages, but affirmed that part quieting the title. Kingkade v. Plummer, 111 Okl. 197, 239 P. 628; Noble v. Johnson, 180 Okl. 169, 68 P.2d 838; Keiser v. Kile, 166 Okl. 41, 26 P. 2d 194; Rucker v. Burke, 183 Okl. 639, 84 P.2d 20.

[3] Frost v. Martin, Tex.Civ.App., 203 S. W. 72.

Plaintiffs' own witnesses testified that these lower sands do not exist throughout all sections of this country, and testified that they would not say whether they existed under this location. Neither would they express an opinion whether oil would be found in these sands or whether there was a likelihood of finding oil therein in paying quantities. They did testify that there was more probability of finding oil in· these lower sands than in the Chase sand. There was other evidence showing that other "wildcat" wells had been drilled to as low a depth as 12,000 feet without encountering oil or gas.

In the absence of any testimony to the effect that there was a reasonable expectation of finding oil or gas in paying quantities in these lower sands, it cannot be said that defendant acted arbitrarily or otherwise than any reasonably prudent operator would have acted under the circumstances in discontinuing further drilling operattions. As stated by the Court of Civil Appeals of Texas, in Texas & Pacific Coal & Oil Co. v. Stuard, 269 S.W. 482, 487: "The lessee is not required to peer down into the soil with an X-ray vision and determine whether at any depth there can be found oil or gas, but merely to exercise good faith and sound discretion as to whether oil or gas may be found."

■ Fraud or malice is never presumed. It must be established by him who relies upon it to sustain his cause of action.[4]

■ Plaintiffs completely failed to establish fraud or malice on the part of the defendant in asserting its continued claim to an interest in the lease. In fact, the undisputed evidence supports the finding of the trial court of good faith. It follows that plaintiffs failed to make a case entitling them to damages against defendant.

■ But assuming, without so deciding, that the lease was forfeited and that the defendant's continued asserted interest therein was not in good faith and that the lease should, therefore, have been released of record, the judgment of the trial court must still be affirmed because, as found by the trial court, plaintiffs failed to prove any damages. Damages did not flow as a matter of course from defendant's failure to release the lease of record. Plaintiffs could recover only if they suffered special damages as a result of such refusal. Special damages denote actual loss naturally suffered, but not necessarily resulting from a defendant's act.[5] It was necessary for plaintiffs to specially allege and prove any such special damages that they suffered as a result of defendant's failure to release the lease. Both Oklahoma and Kansas have held that plaintiffs must prove the loss of an opportunity to re-lease the premises in order to support a judgment for special damages on account of the failure of one to release the lease of record.[6] While the allegations of the complaint relating to special damages are couched in very general terms, they are perhaps sufficient to state a cause of action for such damages, but no proof was offered to establish them. Plaintiffs produced only one witness who offered to testify that the fair and reasonable rental value of the land in question was one dollar per acre per year.

■ The trial court correctly refused to receive this testimony because the fair rental value was not destroyed by the cloud of the lease and did not constitute the measure for recovery of special damages. Special damages would be suffered only if the cloud lost plaintiffs an opportunity to re-lease the premises. There was no testimony offered to prove that a lease was lost or that the premises could have been re-leased if the title had been clear of the cloud of the alleged void lease. Merely offering to prove that the lease was worth one dollar per acre was insufficient to es-

---

4 22 C.J., p. 147; 20 A.J., Par. 229, p. 223, et seq.; 31 C.J.S., Evidence, § 126; Hardware Mutual Ins. Co. v. Jacob Hieb, Inc., 8 Cir., 146 F.2d 447; Dondis v. Lash, 277 Mass. 477, 178 N.E. 624.

5 Erick Bowman Remedy Co., Inc., v. Jensen Salsbery Laboratories, 17 F.2d 255, 52 A.L.R. 1187, and cases cited.

6 See New England Oil & Pipe Line. Co. v. Rogers, 154 Okl. 285, 7 P.2d 638; Ward v. Mid-west & Gulf Co., 97 Okl. 252, 223 P. 170; Mollohan v. Patton, 110 Kan. 663, 202 P. 616, 205 P. 643.

tablish any special damages suffered by the plaintiffs, assuming that the lease was void and should have been released of record.

Affirmed.