Fern A. BOONE, John O. Peck, and O. L. Peck, Jr., Appellants,

v.

KERR–McGEE OIL INDUSTRIES, Inc., a corporation, and Phillips Petroleum Company, a corporation, Appellees.

W. W. MARTIN, Curtis Williams, Executor of the Estate of C. D. Williams, deceased, Sam M. McDaniel, Harry Moyer, Mrs. P. B. (Hallie) Conlee, Appellants,

v.

KERR–McGEE OIL INDUSTRIES, Inc., a corporation, and Phillips Petroleum Company, a corporation, Appellees.

J. D. LIGON, Appellant,

v.

KERR–McGEE OIL INDUSTRIES, Inc., a corporation, and Phillips Petroleum Company, a corporation, Appellees.

Nos. 4830, 4831, 4832.

United States Court of Appeals, Tenth Circuit.

Nov. 9, 1954.

J. D. DeBois, Duncan, Okl. (Hoel & Horton, Stillwater, Okl., on the brief), for appellants.

Jack T. Conn, Ada, Okl. (Kerr, Lambert & Roberts, Ada, Okl., for appellee, Kerr-McGee, Rayburn L. Foster, Harry D. Turner, Bartlesville, Okl., Cecil C. Hamilton and William H. McPherson, Oklahoma City, Okl., for appellee, Phillips Petroleum Company, were with him on the brief), for appellees.

Before PHILLIPS, Chief Judge, and BRATTON and HUXMAN, United States Circuit Judges.

HUXMAN, Circuit Judge.

Each group of appellants in the three cases on appeal here gave oil and gas mining leases to the appellee, Kerr-McGee Oil Industries, Inc., on portions of the West half of the Northwest Quarter of Section 11, Township 1 South, Range 3 West, in Carter County, Oklahoma, the exact description of which is not necessary to set out. The primary term of these leases was five years. Appellee, Kerr-McGee, held valid and enforceable oil and gas leases to the remaining portion of the above described real estate. The interest of appellee, Phillips Petroleum Company, is that of an over-riding royalty holder in the leases held by Kerr-McGee. On March 5, 1951, Kerr-McGee completed a gas well on the Northwest Quarter of the Northwest Quarter of the Northwest Quarter of Section 11, Township 1 South, Range 3 West, in what is known as the Goodwin Section of the Springer Formation. Thereafter Kerr-McGee perfected a pooling arrangement, pooling all the acreage in the above described real estate. This was done under a clause in appellants' lease, giving it the right so to do, which reads as follows:

"Lessee, at its option, is hereby given the right and power to pool or combine the acreage covered by this lease or any portion thereof with other land, lease or leases in the immediate vicinity thereof, when in Lessee's judgment it is necessary or advisable to do so in order to properly develop and operate said lease premises so as to promote the conservation of oil, gas or other minerals in and under and that may be produced from said premises, such pooling to be of tracts contiguous to one another and to be into a unit or units not exceeding 40 acres each in the event of an oil well, or into a unit or units not exceeding 640 acres each in the event of a gas well. Lessee shall execute in writing and record in the conveyance records of the county in which the land herein leased is situated an instrument identifying and describing the pooled acreage. The entire acreage so pooled into a tract or unit shall be treated, for all purposes except the payment of royalties on production from the pooled unit, as if it were included in this lease. If production is found on the pooled acreage, it shall be treated as if production is had from this lease, whether the well or wells be located on the premises covered by this lease or not. In lieu of the royalties elsewhere herein specified, lessor shall receive on production from a unit so pooled only such portion of the royalty stipulated herein as the amount of his acreage placed in the unit or his royalty interest therein on an acreage basis bears to the total acreage so pooled in the particular unit involved."

This pooling arrangement was effected only a few months prior to the expiration of the primary term of appellants' leases and, if valid, has the effect of extending and keeping them in force. Appellees, contending that the pooling of their leases with the remaining acreage was invalid, instituted separate actions in the United States District Court for the Eastern District of Oklahoma, seeking a cancellation of the leases. The actions were consolidated for trial.

The trial court found that drilling more than one well on the eighty acre tract to the Goodwin Section of the Springer Formation would have been wasteful; that appellees acted in good faith in executing and filing the pooling designation and that the same was executed for the purpose of properly de-

veloping and operating the premises, so as to promote the conservation of oil, gas and other minerals. The court further found that the pooling designation was executed for the two-fold purpose of properly developing and operating the premises in the interest of conservation of oil and gas and other minerals and to extend the leases beyond the primary term thereof. Based upon these findings and appropriate conclusions of law not challenged, judgment was entered denying appellants any relief and upholding the validity of the leases in issue.

While a number of assignments of error are urged for reversal, they all center around the one contention that the court's finding that appellees acted in good faith and for the purpose of conservation in effecting the pooling of the acreage was not sustained by the evidence.

Where discretion is lodged in one of two parties to a contract or a transaction, such discretion must, of course, be exercised in good faith. That simply means that what is done must be done honestly to effectuate the object and purpose the parties had in mind in providing for the exercise of such power. All the authorities are to this effect.

In approaching a consideration of this question, we keep in mind a further principle and that is that the law presumes that men will act honestly and fairly in dealing with each other. In other words, the law presumes honesty and fair dealing, and bad faith or fraud is never presumed and must be established affirmatively.[1]

After bringing in No. 1 Williams, Kerr-McGee was faced with a decision whether it would drill individual wells under the terms of each of its leases, or whether it would pool the acreage and produce it under the one well. Which course it should take in the exercise of a sound discretion involved a considera-tion of a number of factors, some of which were, (a) could the maximum amount of gas recovery be had through this one well, (b) would a fair distribution of the proceeds to all the interested parties be made, (c) was it economically feasible to drill additional wells under the other leases, (d) might the drilling of such additional wells detrimentally affect the ultimate amount of recovery of gas from such acreage, and (e) could such additional wells be drilled without probable damage to the recovery of oil from surrounding leases.

It is without dispute in the record that the drilling of additional wells would have been wasteful as found by the court; that such drilling would not have resulted in the ultimate recovery of additional quantities of gas and would have resulted in financial loss to the driller. There is also substantial evidence that if the well drilled into what is known as a gas cap, then the drilling of additional wells would have detrimentally affected the recovery of oil from adjacent leases, if oil was located thereunder, because of the rapid dissipation of the gas pressure.

From this outline of the evidence, it would appear that appellees exercised not only a sound discretion but a wise one. Had this pooling arrangement been effected when two or three years of the primary term of appellants' leases remained, there could be no question with respect to the correctness of the decision of Kerr-McGee to produce the entire acreage from this one well and to pay to each royalty holder his proportionate share of the production. The mere fact that only a few months of the primary term remained does not change the basic problem with which Kerr-McGee was faced and does not make arbitrary a decision which, based upon a consideration of relevant factors, was proper. Neither does the pooling arrangement, reached upon a consideration

1. 20 Am.Jur. § 229; Berryman v. Sinclair Prairie Oil Co., 10 Cir., 164 F.2d 734; Shapiro v. Rubens, 7 Cir., 166 F.2d 659; United States v. Wunderlich, 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113.

of relevant factors, become arbitrary merely because it relieves appellees from ruinous, wasteful drilling operations which would be necessary if it wanted to retain its leases, even if that was one of the factors it had in mind at the time it reached its decision.

We think the findings of the trial court are supported by the record; that its conclusions of law are correct and the judgment appealed from is therefore

Affirmed.