**Leonard WALKER and Sandra Walker dba Walker & Associates, Realtors, Appellants,**

v.

**Robert L. RUGGLES et ux., Appellees.**

**No. 1287.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

July 21, 1976.

---

William J. Rohrbach, Jr., Law Offices of Philip P. Mabry, Houston, for appellants.

Worth B. McCauley, McCauley & Hennigan, Houston, for appellees.

J. CURTISS BROWN, Chief Justice.

This is an action for slander of title.

Robert L. Ruggles and his wife, Marjorie Jane Ruggles (the Ruggles or appellees), brought suit in the district court of Harris County against Leonard Walker and Sandra Walker, d/b/a Walker & Associates (the Walkers or appellants), seeking to recover damages for the slander of their title to certain realty. They also sought the removal and expungement from the Harris County deed records of an instrument filed of record by the Walkers. Following a nonjury trial, the trial court entered a judgment awarding the Ruggles $2,000.00 actual damages and $1,500.00 exemplary damages, and ordering the instrument in question expunged from the deed records. The Walkers have perfected this appeal.

In 1971 Robert Ruggles, a government employee, was required to move from Seabrook, Texas to South Carolina. In May of 1971 the Ruggles listed their house for sale with the Walkers' real estate agency. On July 12 the Walkers sent to the Ruggles in South Carolina an earnest money contract signed by two prospective purchasers. The Ruggles refused to sign the contract on the ground, at least in part, that it did not contain a description of a certain encroachment by their property onto adjacent property, which the Walkers had previously agreed to include in any sales agreement. On July 22 the Walkers filed the unexecuted earnest money contract in the Harris County deed records. Since the contract was not prepared as agreed, the Ruggles subsequently listed the house with another agency after the expiration of the Walker listing. The new agency was not able to sell the house. The Walkers sent the letter set out below to the real estate agency then listing the Ruggles' house. They sent the same letter to all of the title companies in the area and to all real estate agents known to the Walkers to be active in the area. This letter read exactly as follows:

"TO WHOM IT MAY CONCERN:

Please be advised as to the standing judgement against Mr. Robert L. Ruggles and 107 Bayou View, El Lago. On May 29, 1971, we listed this house for $22,500, to be sold on a new loan, FHA or VA. On July 11, 1971, we presented to Mr. & Mrs. Rugles a full price FHA contract, which he refused to sign. We have recorded these instruments in the Harris county deed records. We have also obtained an attorney. We have a FHA appraisal for the full amount plus a waiver from FHA on the encroachment.

Please be assured if this house is ever sold, we plan to collect our full commission."

Subsequently the Ruggles took the house off the market and began renting it in July of 1972. They then brought this action.

█ It is well settled in Texas that in order for a party to recover in an action for "slander of title" he must allege and prove:

(1) the uttering and publishing of the disparaging words, (2) that they were false, (3) that they were malicious, (4) that he sustained special damages thereby, (5) and that the plaintiff possessed an estate or interest in the property disparaged. *Associates Investment Co. v. Tyler*, 378 S.W.2d 717 (Tex. Civ.App.—San Antonio 1964, no writ); *Humble Oil & Refining Co. v. Luckel*, 171 S.W.2d 902 (Tex.Civ.App.—Galveston 1943, writ ref'd w. o. m.); *Stovall v. Texas Co.*, 262 S.W. 152 (Tex.Civ.App.—Fort Worth), writ ref'd per curiam, 114 Tex. 582, 278 S.W. 1115 (1924).

Appellants do not attack the findings of the trial court that they published material which disparaged appellees' title to the property in question, that such disparagement was false, and that the appellees owned an interest in the property. Their attacks are aimed at the third and fourth requirements above: malice and special damages.

█ Appellants' first four points of error attack the sufficiency of the evidence to support a finding of malice. Malice as a basis for recovery of *actual* damages in slander of title cases has been defined to mean merely that the act must have been deliberate conduct without reasonable cause. *Kidd v. Hoggett*, 331 S.W.2d 515 (Tex.Civ.App.—San Antonio 1959, writ ref'd n. r. e.). The supreme court in *Clements v. Withers*, 437 S.W.2d 818 (Tex.Sup. 1969) stated that a recovery of compensatory damages for the tort of interference with an existing contractual relationship required only a showing of intentional and knowing interference. A slander of title action is essentially one for interference with economic relations or prospective economic advantage, and so is very similar to an action for interference with contractual relations. See W. Prosser, The Law of Torts, § 128, at 917 (4th ed. 1971); Green, *Relational Interests*, 30 Ill.L.Rev. 1, 37–39 (1935).

In the present case appellants filed of record an unexecuted earnest money contract and circulated among numerous title companies and real estate agencies a letter

stating that they had a "standing judgment" against appellees. This was false. Their interference was deliberate and knowing and without reasonable cause. Therefore, there was sufficient evidence of malice to sustain an award of actual damages.

■ An award of punitive damages requires a finding of actual malice: ill will, spite, evil motive, or such reckless disregard for the rights of others as to amount to a wilful or wanton act of harm. *Clements. v. Withers, supra; Kidd v. Hoggett, supra.*

■ In the present case Mrs. Walker testified that the unexecuted earnest money contract was filed on the advice of counsel. The finder of fact was not bound by this testimony from an interested witness. Furthermore, the "To Whom It May Concern" letter sent wholly without justification to third party title companies and others dealing in real estate in the area constituted the publication of false and disparaging material. There is no claim that appellants sent this letter on the advice of counsel. The letter was a blatant attempt on the part of appellants to interfere with appellees' economic relations, as well as with appellees' existing contractual relations. The letter could not have served to protect any legitimate interest of appellants in a commission, because they had none. The purpose was to prevent appellees from selling their house and to force them to pay an unearned commission. We hold that there was sufficient evidence of ill will, spite, and reckless disregard for the rights of others to support an award of punitive damages against appellants.

■ Appellants' points of error numbers seven through nine assert that appellees' failure to plead or prove the loss of a specific sale as a result of the disparaging material precludes a judgment in appellees' favor. Regarding the "special damages" element in slander of title cases, several Texas courts have stated that the plaintiff must plead and prove a pending sale that was defeated by the disparagement complained of. *Shell Oil Co. v. Howth,* 138 Tex. 357,

159 S.W.2d 483 (1942); *Humble Oil & Refining Co. v. Luckel, supra; Houston Chronicle Pub. Co. v. Martin,* 5 S.W.2d 170 (Tex. Civ.App.—El Paso 1928, writ dism'd); cf. *Ross v. Jarrett,* 146 S.W.2d 219 (Tex.Civ. App.—Fort Worth 1940), aff'd, 139 Tex. 560, 164 S.W.2d 550 (1942).

It appears to us, however, that the trend in the law is away from an overly rigid circumscription of special damages in actions such as slander of title, disparagement, trade libel, and injurious falsehood, all of which might fall under the general rubric, "intentional interference with economic relations." See Annot., 150 A.L.R. 716 (1944); Annot., 39 A.L.R.2d 840, § 7 (1955); 53 C.J.S. *Libel and Slander* § 276 (1948); 50 Am.Jur.2d *Libel and Slander* § 546 (1970); W. Prosser, The Law of Torts § 128, at 922–24 (4th ed. 1971); 1 F. Harper & F. James, The Law of Torts § 6.1, at 477–78 (1956); Note, *Trade Libel and Its Special Damage Requirement,* 17 Hastings L.J. 394 (1965).

We do not believe that our supreme court would adhere to a rule that a plaintiff may not recover in a slander of title action absent proof of the loss of a specific pending sale. In *Reaugh v. McCollum Exploration Co.,* 139 Tex. 485, 163 S.W.2d 620 (1942), the supreme court adopted Restatement of Torts § 633, comment *d* (1938) as stating the proper rule to be applied in assessing damages in slander of title cases. We are of the opinion that § 633 of the Restatement is a salutary rule and should be applied in its entirety to disparagement cases, including slander of title cases. Section 633 and its "comments" relevant to this case read as follows:

"§ 633. PECUNIARY LOSS.

The pecuniary loss for which a publisher of disparaging matter is liable under the rules stated in §§ 624 and 626–627 is restricted to

(a) that pecuniary loss which directly and immediately results from the impairment of the vendibility of the thing in question caused by publication of the disparaging matter, and

(b) the expense of litigation reasonably necessary to remove the doubt cast by the disparagment upon the other's property in the thing or upon the quality thereof.

*Comment* :

\*　　\*　　\*　　\*　　\*　　\*

*f. Loss caused by prevention of a sale to unknown purchasers.* The disparaging matter may, if widely disseminated, cause pecuniary loss by depriving its possessor of a market in which, but for the disparagement, his land or other thing might with reasonable certainty have found a purchaser. In such case the impossibility or the great difficulty of showing the identity of the particular person or persons who were dissuaded from purchasing the thing by the publication of the disparaging matter makes evidence of the owner's inability to avail himself of a ready market for the thing in question sufficient proof of the loss and often of its extent; indeed, this inability to dispose of readily marketable things is also sufficient evidence that the defamatory matter has come to the knowledge of unknown possible purchasers and has led them to refrain from buying.

Thus, a tradesman whose goods are denounced as adulterated can prove not only the existence of the pecuniary loss necessary to recovery but also its extent by showing that after the dissemination of the disparaging matter the sales of his goods have fallen off to an extent explainable only as the result of the defamatory publication. (See Illustration 1.) So too a holder of an oil lease, who is prevented from selling the lease by the dissemination of the defendant's statement that the holder had no title to it, may prove his loss of a sale to some one of the persons who are buying such leases, by showing that similar leases are readily marketable. In such case, he is entitled to recover the price for which such a lease as his could probably have been sold, even though subsequently the lease became valueless by the discovery that the leased land was outside of the oil-producing area. (See Illustration 2.)

*Illustrations* :

\*　　\*　　\*　　\*　　\*　　\*

2. The sale value of land in a particular locality is greatly increased by the prospect that a bridge will be built affording access to an important business center. A is prevented from taking advantage of the inflated market for his land by B's false statement that A's title is defective. The projected building of the bridge is abandoned and the land resumes its normal value. A is entitled to recover the difference between the price at which he could have sold on the inflated market and the price at which his land is salable after the abandonment of the bridge project is known.

\*　　\*　　\*　　\*　　\*　　\*

*Comment on Clause* (b):

*i.* The rule stated in this Clause is primarily applicable to the disparagement of property in land since in the majority of jurisdictions the person whose land is disparaged by matter of record may bring a bill in equity to remove the cloud cast upon his title by the disparaging publication. The rule, however, is applicable where by statute or otherwise similar relief may be obtained by an action at law or proceedings in equity to remove the cloud cast by the publication of disparaging matter upon the title to chattels or intangible things or upon the quality of land or other things. It is, however, confined to the expense of litigation. It does not include the expense of an advertising campaign, the purpose of which is to convince the public that the disparaging statements are untrue.

*Illustration* :

6. A agrees to buy B's farm. On hearing from C that D claims a perpetual easement to haul stone from his adjacent quarry over B's land, A refuses to complete the purchase of the land until B can offer a clear title. B, by successfully bringing equitable proceedings against D, removes the cloud falsely cast by C upon his title and A completes the purchase. B

is entitled to recover the expense of the proceedings."

Section 624, referred to in § 633, states:

"One who, without a privilege to do so, publishes matter which is untrue and disparaging to another's property in land, chattels or intangible things under such circumstances as would lead a reasonable man to foresee that the conduct of a third person as purchaser or lessee thereof might be determined thereby is liable for pecuniary loss resulting to the other from the impairment of vendibility thus caused."

We therefore conclude that a plaintiff is not precluded from recovering damages in a slander of title action merely because of his inability to prove defeat of a particular sale.

Appellants' points of error numbers five, six, and ten attack the sufficiency of the evidence to support a finding that appellees incurred special damages that were proximately caused by appellants' publication of the disparaging material. The trial court awarded appellees $2,000.00 for actual damages.

The first item of damages recoverable in a disparagement action is the financial loss which results directly from the loss of sales or leases which, but for the disparaging statements, would have been made to known or unknown purchasers. We believe this includes not only any loss in the salable value of the property, but also any reasonable expense incurred in maintaining the property during the time that its vendibility is impaired by the disparaging matter. For appellees to show that the vendibility of their property had been impaired, it was necessary to show that property similar to theirs was readily marketable at comparable prices. This requirement is satisfied by the statement of Mrs. Walker that

"[w]hen we got the first appraisal back, and it came back $20,050, I worked up a bunch of comparables on other homes in the area that had sold, and we sent it back through the FHA and they reissued another appraisal, raising it to $22,500."

The second item of damages recoverable is the reasonable expense of litigation necessary to remove the doubt, or cloud, from the property or title thereto. By way of a trial amendment, appellees sought the expungement from the Harris County deed records of the unexecuted earnest money contract filed therein by appellants on July 22, 1971. Therefore, appellees' reasonable expenses of litigation were recoverable.

Appellees pleaded four items of special damages: (1) $648.00 for one year's interest on their mortgage, (2) $80.00 for one year's care of the yard, (3) $1,300.00 for the loss of broker's fees which the government would have refunded had the house been sold within one year of Mr. Ruggles' change of assignment, (4) $45.00 for FHA appraisal fees. With respect to the maintenance of the yard and the interest paid on the mortgage for one year, we think these items are recoverable and are supported by sufficient evidence.

In addition to the pleaded items of damages, evidence relating to certain travel expenses incurred by appellees was admitted without objection. It was shown that at least $1,265 of these expenses were related to litigation necessary to remove the cloud on the title to their property caused by the disparagement. To that extent, the travel expenses were recoverable. We therefore hold that there was sufficient evidence to support an award of $2,000.00 actual damages, and that such award was not unreasonable or excessive. We further hold that the award of $1,500.00 exemplary damages was not excessive.

All of appellants' points of error having been overruled, the judgment of the trial court is affirmed.

Affirmed.