**C. W. LOUIS and Loy's Building, Inc., Appellants,**

v.

**B. B. BLALOCK and Blalock Landscape Company, Inc., Appellees.**

No. 8738.

Court of Civil Appeals of Texas, Amarillo.

Nov. 8, 1976.

Rehearing Denied Dec. 6, 1976.

Clinton J. Wofford, Jr., and Diamond J. Pantaze, Dallas, for appellants.

Durward D. Moore, Dallas, for appellees.

REYNOLDS, Justice.

A take-nothing judgment was rendered non obstante veredicto in this suit seeking damages for slander of title to real property and for malicious prosecution of a civil suit. The absence of evidence to raise all of the essential elements constituting the slander of title alleged and the failure to show an interference with property by reason of the civil suit require that the judgment be affirmed.

Loy's Building, Inc., a Texas corporation whose president and controlling stockholder is C. W. Louis, owned a tract of real property situated in Dallas County. The tract, consisting of 18,000 square feet, fronts Garland Road for sixty feet and extends in a southerly direction for three hundred feet. Adjacent to and east of this realty is a tract of land owned by R. A. Cooper and leased to Blalock Landscape Company, Inc., a corporation owned by B. B. Blalock and engaged in the nursery business. On each tract of land is a building used for business purposes.

On 15 February 1971, Loy's contracted to sell the front 12,000 square feet of its property to Pat L. Davis and Carl L. Davis for $65,000 cash. Among the conditions of sale were that Loy's would furnish a current survey, convey the property free and clear of any and all encumbrances except for any restrictive covenants and utility easements, and that a policy of title insurance would be issued through Hexter-Fair Title Company, whose willingness to do so would be conclusive evidence of the marketability of title.

When the surveyor, H. Lou Horne, Jr., went upon Loy's property, he noticed "(s)pecifically there was a trail where people were cutting off the property on the south end, driving up and going around the building and then going out to the front of the building. This was not only used by Mr. Blalock, it was used by ourselves and others, too, at this particular time." The surveyor notified Mrs. Mary Gibbs, a closer for the title company, "to the effect that there was this existing passage across the property that should be blocked." The title

company then proposed to issue the title policy subject to a physical and apparent easement.

On advice of counsel, Loy's constructed a fence on the line between its and Cooper's properties at a cost of $680 in an attempt to eliminate a claim of easement. Thereafter on 13 April 1971, Blalock Landscape Company, Inc., instituted suit against C. W. Louis, and later amended its pleadings to include Loy's, to establish an easement by prescription extending twenty to twenty-five feet onto Loy's property and for two hundred to two hundred fifty feet along the boundary line for a common private roadway said to exist between the properties, and to mandatorily enjoin Louis and Loy's from maintaining the fence between the two properties. The record does not show that any injunctive process was issued. Summary judgment was rendered 16 February 1972 decreeing that Blalock take nothing by its suit and that Louis and Loy's recover their costs.

Meanwhile and prior to 11 May 1971, the Davises declined to consummate the contract of sale because, in the words of Carl S. Davis, "we couldn't get a clear title," and, in addition, the property was altered by the erection of the fence. Later on 15 May 1972, Loy's entire tract of 18,000 square feet was sold for $50,000. Subsequently on 20 February 1973, Louis and Loy's, hereinafter denominated Loy's for simplicity, brought this suit against Cooper, Blalock and Blalock Landscape Company, Inc., seeking damages for slander of title to real property and for malicious prosecution of the 13 April 1971 civil suit. By stipulation, B. B. Blalock and his corporation would be jointly liable for any recovery against either, and they will be collectively referred to as Blalock.

Following introduction of evidence before a jury, Blalock's motions for an instructed verdict were overruled and the cause was submitted to the jury. Corresponding to the numbered special issues, the jury found that: (1) Blalock stated he claimed an easement by prescription on the real property owned by Loy's, which (2) was false; (3)

Blalock's action in asserting a prescriptive easement was actuated by malice, and (4) was the proximate cause of the loss of the sale to the Davises; (5) the back 6,000 square feet of Loy's property had on May 23, 1972, a fair market value of $12,000; (6) the damage for the loss of the sale was $27,680; and (7) exemplary damages should be assessed against Blalock in the amount of $23,500.

The jury also found that: (8) Blalock acted without probable cause in prosecuting the previous lawsuit, and (9) was actuated by malice; (10) Loy's suffered actual damages (11) in the sum of $1,500; (17) Blalock consulted an attorney regarding the institution of the lawsuit, but (18) he did not in good faith make a full and true disclosure to his attorney of all material facts within his knowledge, and (19) did not act in good faith and on the advice of his attorney in instituting the lawsuit. By their answers to special issues twelve through sixteen, the jury absolved Cooper of liability.

Loy's motion for judgment on the verdict was denied. Blalock's motion for judgment non obstante veredicto was granted, the court rendering a take-nothing judgment from which Loy's has appealed.

On appeal, no complaint is made to that portion of the judgment in favor of Cooper, and that aspect will not be further noticed. Utilizing twelve points of error, Loy's assigns error to the actions of the trial court in not rendering judgment on the verdict and in rendering judgment non obstante veredicto.

#### 1. Slander of Title Action

■ To recover on the slander of title to real property action, Loy's had the burden to allege and prove that (1) it possessed an estate or interest in property about which (2) Blalock uttered and published slanderous words which (3) were false and (4) malicious, and (5) because of which Loy's sustained special damages. See, e. g., *Walker v. Ruggles,* 540 S.W.2d 470, 473 (Tex.Civ.App. Houston [14th Dist.] 1976, no writ), and cases there cited. The slanderous words which Loy's alleged, and the jury

found, that Blalock falsely and maliciously uttered and published were that Blalock stated he claimed an easement by prescription over Loy's property. An easement by prescription is the open, notorious, hostile, adverse, uninterrupted, exclusive and continuous use of the servient estate for a period of more than ten years, and the absence of any of these elements is fatal to a prescriptive claim. *Davis v. Carriker*, 536 S.W.2d 246, 250 (Tex.Civ.App. Amarillo, 1976, writ ref'd n.r.e.).

▬ Preliminarily to viewing the evidence in the light most favorable to Loy's position, it must be noted that a claim, either oral or written, asserted in the course of a judicial proceeding, cannot be made the basis of a civil action for slander of title. See *Reagan v. Guardian Life Ins. Co.*, 140 Tex. 105, 166 S.W.2d 909, 912 (1942), citing, among other authorities, *Tsesmelis v. Sinton State Bank*, 53 S.W.2d 461 (Tex.Com. App.1932). For this reason, Blalock's allegations of a prescriptive easement pleaded in his prior civil suit may not be used as proof that Blalock had previously stated that he claimed an easement by prescription over Loy's property.

Aside from these judicial allegations, Loy's relies only upon selections from the testimony given by surveyor Horne, Mrs. Gibbs and Blalock to establish Blalock's public utterance of a claim of an easement by prescription. Chosen from Horne's testimony is his response, when asked if Blalock made any statements with respect to the use of Loy's property, that, "I don't recall the exact conversation but . . . I am sure that we did discuss various features of the property there and the fact that he was using this coming through." Mrs. Gibbs' selected testimony was: "The surveyor told me that the adjacent property owner was going across this land to get to his nursery and using this property for ingress and egress to his land. . . ." Isolated from Blalock's testimony is his acknowledgment that he told Horne, "Why, you know I have always used this thing over the years, I have always been going in and out."

▬ Obviously, this testimony falls far short of any claim of an easement by prescription publicly uttered by Blalock; at most, it merely shows a statement of use in common with others for some period of time and, as the trial court correctly charged the jury, mere use will not create an easement. The testimony does no more than create a mere surmise or suspicion or conjecture that Blalock may have publicly uttered a claim of an easement by prescription and it, in legal contemplation, is not any evidence of the fact alleged and required to be proved. *Cactus Drilling Company v. Williams*, 525 S.W.2d 902, 909 (Tex. Civ.App. Amarillo 1975, writ ref'd n.r.e.).

▬ When there is no evidence upon which the jury could have made its finding on an issue vital to the cause of action, a trial court is warranted in rendering judgment non obstante veredicto. *Douglass v. Panama, Inc.*, 504 S.W.2d 776, 777 (Tex. 1974). Therefore, because there is no evidence of probative force to prove that Blalock uttered and published a claim of an easement by prescription, the court properly rendered judgment non obstante veredicto on Loy's slander of title to real property action.

## 2. Malicious Prosecution Action

Loy's alleged that Blalock's prior civil suit was maliciously instituted without probable cause and damaged Loy's in the sum of the $1,500 it expended for attorney's fees in successfully defending the suit. Loy's did not allege either that the injunctive process Blalock sought was issued or that the suit prevented the sale of Loy's property to the Davises.

▬ Malicious prosecution of a civil suit is the institution of the suit with malice and without probable cause. *Morris v. Hargrove*, 351 S.W.2d 666, 667 (Tex.Civ.App. Austin 1961, writ ref'd n.r.e.). Texas law has long recognized that everyone is liable to be harassed and injured in his property and feelings by unfounded suits, but that this is not an injury for which the one sued can have legal redress, except to visit the costs upon the party suing, unless there is

the wrongful suing out of some process by which property is seized and damage sustained. *Smith v. Adams,* 27 Tex. 28, 29–30 (1863). Of course in the ordinary case where no wrongful act other than the institution of a groundless suit is complained of, the mere recovery of costs by the successful party leaves uncompensated his injury for any indirect loss and counsel fees and his inconvenience for loss of time and annoyance; however, this injury and inconvenience, resulting from a resort to the judicial process, is occasioned by the policy of the law to mete out something less than natural justice might demand rather than to increase the risks attending and discouraging resort to the legally-constituted tribunals and at the same time add to the difficulties and intricacies of ordinary litigation. *Salado College v. Davis,* 47 Tex. 131, 135–36 (1877).

■ Thus, for Loy's to maintain an action on Blalock's civil suit after it was terminated in Loy's favor, Loy's must have suffered some interference, by reason of the suit, with its property. *Pye v. Cardwell,* 110 Tex. 572, 222 S.W. 153 (1920). Here, however, Loy's neither alleged nor offered proof that the suit itself caused any interference with its property. Moreover, the unsuccessful attempt by Blalock to have an injunction issued did not constitute an actionable interference with Loy's property. In *Johnson v. King & Davidson,* 64 Tex. 226 (1885), there was an actual issuance of attachment, but the failure to seize any property under it was held fatal to the recovery of damages for maliciously suing out the attachment without probable cause. In short, Blalock's civil suit was, in the words of *Salado College v. Davis, supra* at 136, "an ordinary civil suit, in which no extraordinary process was sued out, and, if the indirect effect of the suit was to interfere with the sale of the property which was to some extent the subject-matter of litigation, this is not such an injury as the law regards or makes actionable."

A trial court is also warranted in rendering judgment non obstante veredicto if a directed verdict would have been proper.

Rule 301, Texas Rules of Civil Procedure. When Loy's failed to allege and prove an interference with its property by reason of Blalock's civil suit, the court would have been justified in granting Blalock's motion for an instructed verdict and, therefore, the subsequent rendition of judgment non obstante veredicto on Loy's malicious prosecution of a civil suit action was proper.

Accordingly, all of Loy's points of error are overruled. We do not reach Blalock's cross-point challenging the admission of certain evidence.

The judgment is affirmed.