**AMERICAN NATIONAL BANK & TRUST CO., Appellant,**

v.

**FIRST WISCONSIN MORTGAGE TRUST et al., Appellees.**

No. 8189.

Court of Civil Appeals of Texas, Beaumont.

Jan. 18, 1979.

Rehearing Denied Feb. 8, 1979.

Edward Cogburn, Houston, for appellant.

Taylor M. Hicks, Houston, for appellees.

KEITH, Justice.

Defendant below appeals from an adverse judgment in a slander of title action and we will refer to the parties in accordance with their positions at the trial of the cause.[1]  Plaintiff sought to remove a cloud from its title to real property in Harris County and to recover damages from the defendant for slander of title.  Defendant filed a cross action against plaintiff and a third party action against Monongahela Realty Partners (hereinafter "Monongahela").

Based upon jury findings, a judgment was rendered in favor of plaintiff removing the cloud from its title, for actual and exemplary damages.  The appeal is predicated upon twenty-two points of error, not all of which will be given separate consideration.

### Statement of the Case

The lawsuit involves a controversy between financial firms which, at one time or another, were engaged in financing an apartment complex in Houston known as Hermitage Square Apartments (hereinafter simply "Hermitage").  These apartments were originally acquired by a corporate real estate syndicator engaged in putting together limited partnerships composed of high-income individuals using the property as depreciable tax write-offs.  The corporate syndicator usually located the properties, became the general partner, and then operated the property for the limited partnership.[2]

Plaintiff's title to the apartment complex is based upon a warranty deed to the land (exclusive of the improvements thereon, both of which were encumbered by several prior liens).  Plaintiff purchased the land for $300,000 and, upon the following day,

---

1.  Plaintiff, First Wisconsin Mortgage Trust, is a Massachusetts Business Trust domiciled in Milwaukee, Wisconsin.  It filed suit against the defendant, American National Bank & Trust Company, a national banking association domiciled in St. Paul, Minnesota.  Defendant filed a third party complaint naming Monongahela Realty Partners, a limited partnership under the laws of Pennsylvania, and Monongahela aligned itself with plaintiff.

2.  The lengthy and often confused record relating to the dealings between the interested entities in this financial transaction and the limited partnership does not require further elaboration.

leased it back to the limited partnership for a period of fifty-five years. The deed and a memorandum giving notice of the lease were filed promptly in the office of the County Clerk of Harris County.

Ten months later the sole general partner of the limited partnership executed a deed of trust to the defendant purporting to create a lien on the apartment complex, including the land, to secure a note for a sum in excess of $100,000. A title insurance binder disclosing the existence of plaintiff's deed and lease was delivered to the defendant before the instruments were signed; but, defendant's official charged with making the loan did not take notice of this defect in the mortgagor's title. As a matter of fact, the defect was not discovered until the borrower—the general partner and the limited partnership—had sought refuge in the bankruptcy courts.[3] Plaintiff declared the lease terminated, took over the supervision of the apartment complex and undertook to find an entity which would take over its position.

Being unsuccessful in having defendant take it out of the transaction, plaintiff offered defendant first refusal if it secured a purchaser. Finally, Monongahela offered a satisfactory price but defendant refused to match the Monongahela offer, and refused to release its purported lien on the property. Instead, with full knowledge of the impending deal with Monongahela, defendant instituted foreclosure proceedings and then filed its trustee's deed of record.

The filing of the trustee's deed served to frustrate the Monongahela transaction since plaintiff could not satisfy the title requirements demanded by the purchaser.

After a reduction of $60,000 in the purchase price, the Monongahela transaction closed into escrow subject to the removal of defendant's cloud upon the title of plaintiff. Plaintiff then instituted this suit for slander of title and sought removal of the cloud on its title and actual as well as exemplary damages.

At the conclusion of the testimony, the trial court submitted certain special issues which were answered favorably to plaintiff and intervenor. The issues are summarized in the margin[4] and the judgment followed the verdict.

We will supplement the statement as necessary in our discussion of the several points to be considered.

### Opinion

■ Defendant first challenges the findings that its claim to the property was not reasonable and that it acted with malice with "no" evidence and factually insufficient points of error. We consider these points of error following the well recognized standards set out for our guidance by the Supreme Court. See, e. g., *Lucas v. Hartford Accident & Indemnity Co.,* 552 S.W.2d 796, 797 (Tex.1977); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965).

The basic thrust of defendant's contention under this series of points is to be found in the first sentence of its argument wherein this language is italicized:

"Slander of title is not appropriate against one who asserts and litigates even a colorable claim."

3. The limited partnership was eventually released from the protection of the bankruptcy court and there then ensued a scramble among the various lenders seeking to foreclose their liens and to protect their relative positions in the assets of the limited partnership. None of these maneuvers bears upon the outcome of this appeal.

4. The jury found, in substance (1) that defendant failed to release its deed of trust mortgage without reasonable cause; (2) that such failure resulted in actual damage to plaintiff of $60,-000; (3) that defendant's foreclosure and sale of the property under its deed of trust was without reasonable cause; (4) which caused plaintiff actual damages in the sum of $115,-000; (5) that in failing to release its deed of trust lien, defendant acted with malice; (6) that in foreclosing its deed of trust lien, defendant acted with malice; (7) plaintiff was entitled to recover $50,000 in exemplary damages. In response to defensive issues, the jury *failed to find*: (8) that plaintiff's deed was intended to be a mortgage; or that (9) plaintiff waived the obligation of the limited partnership to obtain its consent to the execution of defendant's deed of trust.

We disagree for the reasons now to be stated.

■ At the outset of our discussion it is well to recall the necessary elements of a slander of title action. These were stated and the supporting authorities collated in *Walker v. Ruggles,* 540 S.W.2d 470, 473 (Tex.Civ.App.—Houston [14th Dist.] 1976, no writ):

> "It is well settled in Texas that in order for a party to recover in an action for 'slander of title' he must allege and prove: (1) the uttering and publishing of the disparaging words, (2) that they were false, (3) that they were malicious, (4) that he sustained special damages thereby, (5) and that the plaintiff possessed an estate or interest in the property disparaged. . . ." (citations omitted)

Our case is readily distinguishable from *Louis v. Blalock,* 543 S.W.2d 715, 718 (Tex. Civ.App.—Amarillo 1976, writ ref'd n. r. e.), wherein the alleged slander consisted only of the filing of a judicial action seeking to establish the existence of a prescriptive easement across plaintiff's property. Defendant's first *judicially* asserted claim to the property came in defense to plaintiff's suit. With full knowledge of the pendency of the sale to Monongahela, defendant caused the deed of trust to be foreclosed and filed its trustee's deed for record.

■ At the time defendant acquired its deed of trust lien, the mortgagor was merely a tenant in possession under a lease. Defendant was charged with knowledge of the public records that its mortgagor could not assign such lease without the consent of the lessor and no one contends that any such consent was given. Consequently, under *Tex.Rev.Civ.Stat.Ann. art. 5237 (1962),* any attempted assignment was unlawful; and, "[s]uch statute is made a part of every lease contract by operation of law." *Young v. De La Garza,* 368 S.W.2d 667, 670 (Tex. Civ.App.—Dallas 1963, no writ).

■ Our law seems to be clear that one taking a mortgage from a lessee is considered to be a sublessee, and, as stated by Chief Justice Calvert in *Zeidman v. Davis,* 161 Tex. 496, 342 S.W.2d 555, 558 (1961):

> "There is no privity of contract between a sub-lessee and the original lessor. See *Amco Trust, Inc. v. Naylor,* Tex.Sup. [159 Tex. 146,] 317 S.W.2d 47, 50, 73 A.L.R.2d 1109 . . . ."

Thus, defendant's sole claim of title is through the tenant who mortgaged the property without the consent of the lessor. As said in *Brown v. Johnson,* 118 Tex. 143, 12 S.W.2d 543, 545 (1929):

> "Without this consent one holding premises under a subletting is a trespasser and occupies the attitude of a stranger to the landlord."

■ At the time defendant negotiated the deed of trust lien it was charged that it was dealing not with an owner, but with a lessee who had no right to assign his lease without the consent of the lessor. At the time defendant foreclosed on its invalid deed of trust, it knew that the trustee's deed was invalid because it was a stranger to plaintiff's title. Nevertheless, and with knowledge of the Monongahela negotiation, and in an effort to frustrate such transaction, it filed its trustee's deed for record. It cannot now be heard to say that it was only litigating its "bona fide" claim to the property. These were all acts taken *before* there was any litigation and the jury was entitled to conclude that such acts were taken to harm plaintiff.

Defendant has always contended that the sale-leaseback arrangement was in effect a mortgage loan.[5] This contention has been maintained notwithstanding the fact that plaintiff has at all times insisted that the deal was exactly what was disclosed by the documents. Indeed, it is passingly strange

---

**5.** Defendant persists in such contention even upon appeal as shown by this language in its brief: "The basic defense, that the Ground Sale-Lease Back was, in fact and agreement, a mortgage loan, *if established by jury findings,* would have placed title to both land and im- provements in Hermitage Square Apartments, Ltd., and, therefore, validated American Bank's foreclosure of its 5th Position Mortgage." (emphasis supplied) The defendant failed to secure jury findings: Special Issue No. 8, footnote 4 hereof.

that such contention is still urged even after the plaintiff's grantor (and defendant's mortgagor), Heaton, testified (after having been called by defendant) that there was never any intent on the part of either party to the land sale and leaseback transaction that the deed was meant to be a mortgage given to secure a debt.

We have given careful consideration to the cases, including many from out of state, cited by the defendant but find none to be in point. Defendant's sole claim of title through the deed of trust was invalid from its inception. Its claim against plaintiff is and has always been groundless. With knowledge, actual or constructive of plaintiff's rights, and with the avowed purpose of frustrating the Monongahela sale, defendant's contentions presented by points one and two are without merit and each is overruled. *Walker v. Ruggles,* supra, 540 S.W.2d at 473, citing, inter alia, *W. Prosser, The Law of Torts, § 128, at 917 (4th Ed. 1971).*

■ Nor are we impressed by defendant's argument that it was protected because it acted under advice of counsel. There are several reasons which militate against any such contention, one of the first being that such a contention was not pleaded nor did defendant submit requested issues tendering such a defense to the jury. *Winn v. Warner,* 199 S.W.2d 560, 568 (Tex. Civ.App.—Waco 1947, writ ref'd n. r. e.).

Additionally, the defendant's evidence supporting this defense was extremely weak, one of its attorneys testifying that he was not consulted until after the foreclosure while the recollection of the other attorney was "foggy". Neither made any effort to talk to the mortgagor concerning the trial theory that the sale-leaseback was in reality a mortgage.

■ We now address defendant's contention that the actual malice needed to support an action of slander of title is not to be found in our record. It is obvious, from our prior statement of the facts, that we disagree with defendant's argument. As said by Justice Pope while upon the Court of Civil Appeals in *Kidd v. Hoggett,* 331 S.W.2d 515, 518 (Tex.Civ.App.—San Antonio 1959, writ ref'd n. r. e.):

"Malice is an essential element to the recovery of actual damages in a suit for slander of title. . . ." (citations omitted)

Justice Pope then continued the discussion, noting the distinction between the nature of the malice needed to support the recovery in slander of title and the malice needed to support a recovery of exemplary damages, saying:

"Malice as a basis for recovery of actual damages, as distinguished from punitive damages should mean that the act or refusal was deliberate conduct without reasonable cause. . . . Malice as a basis for recovery of punitive damages should mean actual malice, that is, ill will, bad or evil motive, or such gross indifference to or reckless disregard of the rights of others as will amount to a willful or wanton act."

■ We now turn our attention to defendant's attack upon the allowance of exemplary damages. The jury, in response to Special Issues Nos. 5 and 6, found that defendant acted with malice[6] in failing to release its lien and in foreclosing thereon, and, based upon these answers, fixed the amount of exemplary damages at $50,000. These findings are challenged by points claiming that the evidence is legally and factually insufficient to sustain such answers. Following the appropriate standards of review as indicated earlier, we disagree and overrule such points.

---

**6.** The definition of malice, which comes to us without objection as to verbiage, read: " 'Malice,' as used herein, means ill will, bad or evil motive, or such gross indifference or reckless disregard of the rights of others as to amount to a willful or wanton act."

The instruction on exemplary damages read: " 'Exemplary damages' as used herein means an amount which you may in your discretion award as an example which will deter the defendant and others from engaging in same or similar conduct, and thereby protect the public interest, and as a penalty or by way of punishment. Due regard should be given to the party's inconvenience and sense of being wronged."

It is unnecessary to repeat the factual basis of the record supporting such findings and the award. Richard E. Berger, a vice president of defendant, actively handled the details of the several transactions and participated in the very acts which resulted in damage to plaintiff. Indeed, defendant has ratified and approved the act of Berger in taking the deed of trust from Heaton and in ordering its foreclosure by seeking to recover upon such acts in this suit. Defendant has never repudiated Berger's act nor has it contended that he lacked authority to do that which caused plaintiff's loss.

Texas adopted the *Restatement of Torts, § 909*, setting out the several bases upon which a corporation could be held liable for exemplary damages in the case of *King v. McGuff*, 149 Tex. 432, 234 S.W.2d 403, 405 (1950). In *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627, 630 (Tex.1967), the Court followed *King* and the *Restatement*, thereby holding the principal liable for exemplary damages in a case where it had been stipulated that the employee involved was the manager of the club and in the course of his employment.[7]

See also, *International Security Life Insurance Co. v. Finck*, 496 S.W.2d 544, 546 (Tex.1973); *Richter v. Plains National Bank*, 479 S.W.2d 95, 97 (Tex.Civ.App.—Eastland 1972, writ ref'd n. r. e.); *Transport Insurance Company v. Mabra*, 487 S.W.2d 704 (Tex.1972).

■ Thus, under the authoritative holding of the cited cases, defendant is liable in exemplary damages for Berger's acts because "(d) the employer or a manager of the employer ratified or approved the act." [8]

Defendant's points five and six challenging the award of exemplary damages, are overruled.

■ Several points of error challenging the two findings of the jury awarding actual damages because of defendant's acts are submitted jointly.[9] Our view of the record requires that we consider the challenges separately.

■ The jury found in answer to Special Issue No. 2 that plaintiff had suffered actual damages amounting to $60,000 because of defendant's refusal to release its lien. These are, perhaps, both "no" evidence and "insufficient" evidence points challenging this finding and we will follow the usual rules governing appellate review of such points. See *Lucas v. Hartford Accident & Indemnity Co.*, supra, 552 S.W.2d at 797.

After reviewing the record carefully, we disagree and overrule the evidentiary points challenging such finding. The original sale agreement with Monongahela was for $300,000 conditioned on clear title. The title company required a judicial declaration that the lease had terminated and a release of the lien. The judicial declaration was obtained but defendant refused to release its lien.

This refusal frustrated the Monongahela deal but it was the subject of renegotiation

---

7. The *Restatement* text so adopted does not differ materially from the test laid down by Chief Justice Cureton in the famous trio of cases on the subject: *Fort Worth Elevators Co. v. Russell*, 123 Tex. 128, 70 S.W.2d 397, 400 (1934); *Morton Salt Co. v. Wells*, 123 Tex. 151, 70 S.W.2d 409 (1934), and *Southwestern Gas & Electric Co. v. Stanley*, 123 Tex. 157, 70 S.W.2d 413 (1934). These cases were all cited in *King*, supra, as being "analogous" to the rule set out in the *Restatement*. (234 S.W.2d at 405)

8. *Restatement of the Law Second, Torts, § 909(d) [Tentative Draft No. 19 (March 30, 1973)]*, now reads: "(d) the principal or a managerial agent of the principal ratified or approved the act." As applied to the facts in the case at bar, the change in wording of subsection (d) does not affect the result which we

have reached. See also *Restatement of the Law Second, Agency 2d, § 217C*.

9. We pause to express our disapproval of the action of defendant in failing to follow the plain provisions of *Tex.R.Civ.P. 418(e)(i)* by omitting "a fair, condensed statement of the facts pertinent to such points, with references to the pages in the record where the same may be found . . . ." The entire statement is argumentative and the references to the record are few. With eighteen volumes in the statement of facts, counsel for an appellant places his chances of success in grave jeopardy by ignoring the fundamental rules governing appellate briefs. We do not, in this instance, exact any sanctions because of such violation.

downward to $240,000. The resulting loss to plaintiff was $60,000—the precise sum awarded plaintiff by the jury in Special Issue No. 2.

Under the facts and authorities cited earlier, the refusal of defendant to release its purported lien was wrongful and the award of damages is supported by the evidence in the record. Point seven is overruled.

The attack upon the award of $115,000 actual damages because of the foreclosure of the deed of trust and the recording of the trustee's deed (as found in Special Issue No. 4), is not as susceptible of a ready answer. Although defendant does not contend specifically that the separate submission resulted in a double recovery, a careful review of the evidence does not reveal probative evidence supporting the award of $115,000.

The weakness in factual support is epitomized by this quotation from plaintiff's brief—the only summary of the evidence it offers in support of the finding:

"In responding to questions from ANBT's counsel on cross-examination, Ben Abrohams stated his belief that a title company might have issued a policy irrespective of the failure to release (S.F. 789–90). This belief is quite reasonable in view of the lease provision which rendered the October 1, 1973 deed of trust given without consent of the landlord 'null, void and of no effect.' However, when ANBT foreclosed, and took a trustee's deed on the entire fee, there was no chance to obtain a clear title policy without the ensuing litigation. Thus, the jury awarded the remainder of damages, other than the reduction of purchase price, under the 'foreclosure and sale' special issue."

Ben Abrohams, the witness mentioned in the preceding excerpt from plaintiff's brief, was a Wisconsin lawyer who handled the details of the transaction on behalf of the plaintiff in that state. He attended the trial and apparently sat at counsel table during the presentation of the evidence.

A careful study of Abroham's testimony [10] does not convince us that it has the probative effect attributed to it by plaintiff's counsel. It lacks even a glimmer of probative value and, in the language of our Supreme Court in *Seideneck v. Cal Bayreuther Associates*, 451 S.W.2d 752, 755 (Tex.1970), it

". . . falls within the scope of the rule announced in *Joske v. Irvine*, 91 Tex. 574, 44 S.W. 1059 (1898), to the effect that when the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, such evidence is in legal effect no evidence, and it will not support a verdict or judgment."

Plaintiff's attempt to support such award of actual damages by the evidence relating to attorney's fees is likewise unavailing. Such fees are not recoverable in an action of slander of title under the holding of this Court in *Shell Petroleum Corporation v. Howth*, 133 S.W.2d 253, 264 (Tex.Civ. App.—Beaumont 1939), reversed on other grounds, 138 Tex. 357, 159 S.W.2d 483 (1942). We are unable to find where this square holding by this Court has been overruled.

Plaintiff argues that the recovery of attorney's fees is authorized as part of the "expense of litigation" in removing the cloud on its title. In so contending, plaintiff relies upon language found in *Walker v. Ruggles*, supra, 540 S.W.2d at 474–475.

---

10. The witness Abrohams on cross-examination:

"Q. . . . So long as that deed of trust was on record, the foreclosure of the deed of trust would not have any particular effect on the position of the title company?

"A. I would disagree with that and I can't— *I don't know what the situation is that applies in Texas* but, for example, in Wisconsin where you had a similar type situation where

an instrument is of record and for one reason or another you think there is—you are going to get a release or you are about to start a proceeding that will terminate the instrument, the title company is often under certain circumstances willing to take indemnity, for example, from the party that wants it released of record. *In Wisconsin I have had a number of cases where we have been able to do that.*" (emphasis supplied)

**320**

Perhaps this is a sound rule to be followed in the future; but, it must be admitted, it is contrary to the generally prevailing rule that such fees are not recoverable in either contract or tort actions in the absence of a statute or contract. See *New Amsterdam Casualty Co. v. Texas Industries, Inc.*, 414 S.W.2d 914, 915 (Tex.1967), and *Turner v. Turner*, 385 S.W.2d 230, 233 (Tex.1964).

Plaintiff argues that even if it is not entitled to recover its attorney's fees because of the slander of title, it is entitled to such fees as a part of its expenses incurred in the suit to remove cloud upon its title caused by the recordation of the trustee's deed. Even if such be conceded, plaintiff may not prevail because it made no attempt to segregate the fees and expenses incident to the slander of title facet of the litigation and that relating to the removal of cloud upon its title.

The burden was upon plaintiff to offer evidence of probative effect in its claim for damages. Until and unless it segregated its attorney's fees, it offered no evidence supporting an allowance thereof. See and compare *International Security Life Insurance Co. v. Finck*, supra, 496 S.W.2d at 546–547; *Pockrus v. Connelly*, 521 S.W.2d 115, 118 (Tex.Civ.App.—Beaumont 1975, writ ref'd n. r. e.); *Modine Manufacturing Company v. North East Independent School District*, 503 S.W.2d 833, 845 (Tex.Civ.App.—Beaumont 1973, writ ref'd n. r. e.).

We sustain defendant's point of error number nine: "It was error for the Trial Court to enter judgment for actual damages based on foreclosure and sale (Special Issue No. 4), inasmuch as no evidence supported such finding." The judgment will be reformed so as to reduce the judgment by the amount of the award found in answer to Special Issue No. 4, $115,000.

Defendant has several other points of error which it has presented with vigor and which need more than passing mention. For instance, defendant offered its vice president Berger as a witness and established that he was also a licensed lawyer.

It now complains that the trial court erred in not permitting Berger to testify as to his understanding of the law of sale-leaseback transactions and as to statements made to him by Heaton, the officer of his mortgagor who negotiated the ill-fated deed of trust lien.

Heaton testified, denying that his transaction with Berger's principal was a mortgage. Thus, Berger's version of the conversation he had with Heaton was hearsay of the rankest sort as confirmed by our citation of the basic textbook authority: *1 C. McCormick & R. Ray, Texas Law of Evidence, § 782, at 560 (2d Ed. 1956).*

Nor was testimony as to Berger's understanding of the law of Minnesota as it applied to sale-leaseback transactions in Texas—the precise issue then before the trial court—admissible. As Dean McCormick has so aptly observed: "[T]he construction and interpretation of written instruments falls within the province of the judge, or the jury under proper instructions from the judge." *2 C. McCormick & R. Ray, Texas Law of Evidence, § 1425, at 265 (2d Ed. 1956).* We find no error in the exclusion of the proffered testimony of Berger.

We have examined the remaining points of error brought forward by defendant and, finding no merit therein, each of such points is overruled. And, having found error affecting only a part of the judgment, we reform the judgment by reducing the amount awarded to the plaintiff by the sum of $115,000; and, as reformed, the judgment of the trial court is affirmed. Pursuant to *Tex.R.Civ.P. 448*, for reasons apparent from the face of this opinion, costs in all courts are divided equally between plaintiff and defendant and none are assessed against Monongahela.

REFORMED and AFFIRMED.