Thomas RYAN, Appellant,

v.

MO–MAC PROPERTIES, Western Wildcat, Inc., and Martha Rankin, Appellees.

No. 1924CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 26, 1982.

Rehearing Denied Sept. 23, 1982.

Raul Garcia, Alice, for appellant.

Patrick P. Rogers, Porter, Gonzalez & Rogers, Richard W. Crews, Jr., Brin & Brin, David M. Coover, Coover & Coover, Corpus Christi, for appellees.

Before NYE, C.J., and YOUNG and GONZALEZ, JJ.

## OPINION

YOUNG, Justice.

This appeal involves actions for removal of a cloud from title and for slander of title. Trial was before the court without a jury. Dr. Thomas Ryan appeals from the judgment which declared title in Western Wildcat, Inc. and ordered him to pay his opponents' attorney's fees. Western Wildcat, Inc. and Martha Rankin bring cross-points requesting attorney's fees and pre-judgment interest. We reverse in part and affirm in part.

Prior to 1977, Southwest Theatres, Inc. owned several parcels of property, including two theaters and a discotheque in Edinburg and 5.046 acres of land in Nueces County. Martha Rankin was a shareholder in Southwest Theatres, Inc., who desired to purchase its property. While negotiations for the purchase were taking place, she formed a corporation called Coastal Ventures, Inc. The Secretary of State authorized a charter for Coastal on October 28, 1977. Mrs. Rankin was the president and sole shareholder of Coastal. Dr. Ryan, a friend of Mrs. Rankin for whom she had done some bookkeeping work, became a director and vice president of Coastal, but he received no stock. Mrs. Rankin stated that she wanted to form the corporation to act as operating agent for her properties.

In order to purchase the property from Southwestern Theatres, Martha Rankin needed to obtain a loan for $280,000.00. She approached the Guaranty National Bank of Corpus Christi with Dr. Ryan, who was a customer of that bank. Mrs. Rankin applied for the loan and pledged all the property involved in the sale as collateral as well as assigning her interest in the leases. The primary obligor of the promissory note was Mrs. Rankin; however, Dr. Ryan acted as guarantor. The sale took place and the property was transferred to Mrs. Rankin on November 7, 1977. Thus, the property was in Mrs. Rankin's name only.

Next, Mrs. Rankin contemplated the purchase of the leasehold interest of Shoppers World in Corpus Christi. To do so, additional financing was necessary so she had prepared financial statements for herself and for Coastal. Listed among the assets of Coastal is the property sold by Southwest Theatres to Martha Rankin. She stated that she intended to transfer that property to Coastal if the deal to obtain the leasehold to Shoppers World went through. Since the Shoppers World project did not take place, the property was never transferred to Coastal. Later, the properties were all sold with the exception of the 5.046 acres in Corpus Christi. In November of 1978, at the annual shareholder's meeting, it was resolved to dissolve Coastal. The corporation has forfeited its right to do business.

Meanwhile, Mrs. Rankin paid off the $280,000.00 loan on October 31, 1978, as well as a $7,000.00 loan from Dr. Ryan in November of 1978. Next, she decided to form a new corporation called Western Wildcat. The Articles of Incorporation for Western Wildcat were filed on September 25, 1979. On the same day, Mrs. Rankin executed a deed transferring the five-acre property to Western. Mrs. Rankin is the president and sole shareholder of Western.

By June of 1980, Western and Mo-Mac Properties were negotiating for the sale of the five-acre tract. To prevent this conveyance, Dr. Ryan executed a deed for an undivided half interest in the property from Coastal to himself, signing as president of Coastal. Four days later, the negotiations between Mo-Mac and Western culminated in an agreement to sell the property for $175,000.00. The contract required the seller to give a warranty deed and to furnish a

policy of title insurance issued by Stewart Title Company. In the event of litigation between the signatories to the contract of sale, the unsuccessful party would be required to pay court costs and the other party's reasonable attorney's fees.

When Stewart Title researched the title of the property, the deed from Coastal to Dr. Ryan came to light. Western's attorney then sent a letter to Dr. Ryan requesting Dr. Ryan to alleviate the problem. Dr. Ryan failed to do so. Stewart Title was unable to issue a title policy before the closing date of August 1, 1980, and the sale did not take place.

Alleging that they were ready, willing and able to perform on the closing date, Mo-Mac brought suit for specific performance against Western. Western admitted liability for specific performance and brought a cross-claim against Dr. Ryan for slander of title. Western requested that the court remove the cloud on its title created by Dr. Ryan's deed and asked for court costs and attorney's fees for the specific performance claim and for the action to remove the cloud from their title. Western also requested money damages for interest lost on payments, which would have been received if the sale had taken place on the closing date.

Dr. Ryan filed a counter-claim against Mrs. Rankin and Western alleging that Mrs. Rankin had proposed the purchase of $280,-000.00 in assets for Coastal and asked him to sign a guaranty for the note given to purchase that property in exchange for a 50% interest in Coastal. He alleged that Mrs. Rankin promised to transfer the property purchased from Southwest Theatres to Coastal, but that she failed to do so and that she subsequently sold all the property except for the five-acre parcel without giving him an accounting. He claimed damages in the amount of one-half of the value of all the properties and demanded that the proceeds from the sale to Mo-Mac be used to make him whole. Prior to trial all parties agreed to consummate the sale to Mo-Mac without waiving their respective claims to the proceeds of the sale.

At the trial, Dr. Ryan failed to produce anything in writing which would substantiate his claim to 50% of Coastal's assets or to the property involved here. He testified, however, that Mrs. Rankin had made him the promise of the 50% interest and he also elicited testimony from three witnesses regarding this agreement. Dr. Ryan also brought out testimony regarding the contention that his deed as the sole cloud on title prevented transfer to Mo-Mac. Mr. Pete Null, the attorney for Western who handled the sale to Mo-Mac, testified that there were some lawsuits in Victoria County that were raised as objections to clear title by Stewart Title. One of the parties to those suits was Southwest Theatres. Those suits did not involve the five-acre parcel of property. Mr. Fulghum of Stewart Title testified that his company would not issue a title policy until it received judgments or dismissals of those suits. While Mr. Null on behalf of Western stated that he received those dismissals before the closing date and that he conveyed this information to Stewart Title by telephone, the dismissal papers themselves were not sent to Stewart Title until the day before the trial. Thus, on the date of trial, Stewart Title would have issued a title policy but for Dr. Ryan's deed.

Mrs. Rankin and Western introduced evidence concerning the amount of money which Western would have received by the time of trial if the sale had taken place on the scheduled date. The attorneys for these parties testified about the services they performed and the amount of their fees. These fees amounted to approximately $7,000.00 to the date of the testimony. They also estimated a fee for the appeal. The parties also stipulated that $1,500.00 for the suit for specific performance was a reasonable fee for Mo-Mac's attorney. The court approved this stipulation.

In its judgment, the court awarded specific performance to Mo-Mac as well as the $1,500.00 in attorney's fees. The court found good title to be in Western and declared that the deed executed by Dr. Ryan was void. The judgment further declared

that the proceeds from the sale of the property be paid to Western. The court ordered Dr. Ryan to indemnify Western Wildcat for the $1,500.00 attorney's fees awarded to Mo-Mac and to pay Western Wildcat $6,720.00 in attorney's fees for the prosecution of the suit to remove a cloud from title.

In his first two points of error, Dr. Ryan claims that there is either no evidence or insufficient evidence to support the trial court's finding that title to the property was in Western. He argues that fraud on the part of Mrs. Rankin invalidates her conveyance to Western. When confronted with a no evidence point of error, this Court is required to consider only that evidence which supports the finding and then in its most favorable light. *Schaefer v. Texas Employer's Insurance Assoc.,* 612 S.W.2d 199 (Tex.1981); *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965). In considering an insufficiency point, it is our duty to consider and weigh all the evidence in the record to determine if it supports the judgment. *Burnett v. Motyka,* 610 S.W.2d 735 (Tex. 1980); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951).

■ Our review of the record discloses that Dr. Ryan bases his claims on alleged oral promises by Mrs. Rankin in November, 1977, to convey real estate to Coastal and to make him a 50-50 partner. He contends that failure to keep these promises and disposal of the proceeds from the sale of the property constitutes fraud. He urges that the transfer of the property from Coastal to Western for no consideration was void because it was done to avoid his claim. Therefore, the trial court should not have found title in Western Wildcat. Thus, appellant's first two points of error require us to address the merits of his claim for fraud. Since his third and fourth points of error concern the trial court's failure to find for him on the merits, we will consolidate our discussion of all four points.

In this case, the absence of any tangible or documentary evidence on the issue of the

purported 50–50 agreement meant that the trial court was required to decide which version of the testimony to believe. Even if we were inclined to do so we could not disturb the determination of the trial judge because as the fact finder he is the sole judge of the credibility of the witnesses and the weight to be accorded their testimony. *National Resort Communities v. Holleman,* 594 S.W.2d 195, 197 (Tex.Civ.App.—Austin 1980, writ ref'd n.r.e.). Our review of the record shows that there was sufficient evidence to support the judgment. Points one through four are overruled.

■ In his fifth point, the appellant challenges the award of attorney's fees. In Texas, attorney's fees are not recoverable in a tort action or in a suit upon a contract unless provided by statute or by a contract between the parties. And because statutes permitting a recovery of attorney's fees are penal in nature and in derogation of the common law, they must be strictly construed. *New Amsterdam Casualty Co. v. Texas Industries, Inc.,* 414 S.W.2d 914, 915 (Tex.1967). Tex.Rev.Civ.Stat.Ann. art. 2226 (Vernon Supp.1982), permits recovery of attorney fees in certain cases. The statute does not include actions for slander of title or to remove clouds from title.

In support of their position, appellees refer us to *Walker v. Ruggles,* 540 S.W.2d 470 (Tex.Civ.App.—Houston [14th Dist.] 1976, no writ). *Walker* at page 476 allowed recovery of reasoanble attorney's fees as expenses of litigation necessary to remove the cloud from title. The opinion cited no authority and was not submitted to the Supreme Court for review.[1]

The plaintiffs in *American National Bank v. First Wisconsin Mortgage Trust,* 577 S.W.2d 312 (Tex.Civ.App.—Beaumont 1979, writ ref'd n.r.e.), asked for attorney's fees in a slander of title action. They claimed that these fees were expenses of the litigation to remove the cloud from title as in *Walker* and urged the court to follow the rule set down in that case. The Beaumont

---

1. In *A.H. Belo Corp. v. Sanders,* 632 S.W.2d 145, 146 (Tex.1982), our Supreme Court overruled *Walker* on other grounds.

court declined to do so. *American National Bank v. First Wisconsin Mortgage Trust,* supra at 319. Attorney's fees may not be awarded as indemnity for third party litigation expense either. *Cupples Coiled Pipe, Inc. v. Esco Supply Co.,* 591 S.W.2d 615 (Tex.Civ.App.—El Paso 1979, writ ref'd n.r. e.). We sustain the appellant's fifth point of error and we reverse that part of the trial court's judgment that awards attorney's fees against Dr. Ryan to the appellees and it is here rendered that the appellees take nothing against Dr. Ryan for attorney's fees. The remainder of the judgment is affirmed.

The appellees brought two cross-points challenging the failure of the trial court to award attorney's fees for appellate work and pre-judgment interest on funds they would have received if the sale had closed on the original date. As a predicate to the presentation of cross-points, the appellee must apprise the trial court of his objection to the judgment. *West Texas Utilities Co. v. Irvin,* 161 Tex. 5, 336 S.W.2d 609 (1960). Because these appellees did nothing to inform the trial court of their dissatisfaction with its judgment, we need not consider their cross-points.

The judgment of the trial court is affirmed in part and reversed and rendered in part.